(No. 25869.

The General Concrete Construction Company, Defendant in Error, *vs.* The Industrial Commission *et al.*—(Dallas Nellans, Plaintiff in Error.)

*Opinion filed February 14, 1941.*

ARNOLD, CHIPMAN & DEGNAN, LEWIS & CARSON, and WILLIAM K. JORDAN, for plaintiff in error.

B. F. MARTIN, for defendant in error.

Mr. JUSTICE MURPHY delivered the opinion of the court:

An arbitrator allowed to Dallas Nellans compensation under the Workmen's Compensation act for an accidental injury alleged to have arisen out of and in the course of his employment with the General Concrete Construction Company. It was sustained by the Industrial Commission but, on *certiorari,* the circuit court of Cook county set the award aside. This court granted a writ of error to review the action of the circuit court.

The only question is whether plaintiff in error's injury arose out of and in the course of his employment. Defendant in error is an Illinois corporation organized in 1936. Prior to that year, the same business was carried on by the same persons organized as a South Dakota corporation, but it was licensed to do business in this State. Since its organization as an Illinois corporation it has maintained an office and place of business in Chicago. It was principally engaged in the construction and repair of concrete chimneys. Plaintiff in error lived at Plymouth, Indiana, and had worked for defendant in error a number of years, part of the time in the capacity of foreman of the job upon which he was working. His employment was not continuous. When not employed he stayed at his home in Plymouth,

and when defendant in error had work it communicated with him, directing him to come to the Chicago office. There he was given instructions as to the character of the work and its location. In the several years which he had worked for defendant in error, he had been directed to go to various places in Illinois and in many of the other States. Defendant in error paid transportation expenses from Plymouth to the location of the work and return, computed on travel by rail or bus via Chicago. Expenses of meals, hotels and other traveling expenses were paid by plaintiff in error. At times plaintiff in error traveled by automobile but his transportation was paid at train or bus costs. From the evidence it is clear that the company knew he was traveling by automobile but made no protest. Plaintiff in error's compensation was $1 per hour for time actually employed. Time began when he started work on each job and ceased when it was finished. When a job was completed he returned to Plymouth to await further instructions.

October 20, 1938, plaintiff in error was employed on a chimney at Woodstock, Illinois. Defendant in error requested him to report to the Chicago office. He was directed to proceed to West Tulsa, Oklahoma, to inspect a chimney. Defendant in error advanced money to meet traveling expenses and pay-roll. Plaintiff in error and his wife rode with Herbert Blazedale in his automobile to West Tulsa. Blazedale assisted plaintiff in error in the inspection work at West Tulsa. In making the inspection, plaintiff in error discovered certain conditions in the chimney and sought the advice of George Shervington in regard to them. Shervington was secretary and treasurer of the company. Shervington arrived at West Tulsa November 5, and, with plaintiff in error, made an inspection of the chimney. It appears that the company for whom the work was being done concluded to discontinue the original plan, and when Shervington left West Tulsa plaintiff in error had

only a few days' work remaining. Shervington and plaintiff in error had a conversation at West Tulsa about other work. Shervington suggested that they were figuring on work in Kansas and it was possible plaintiff in error would be directed to go from West Tulsa to Kansas. Shervington told plaintiff in error of the possibility of certain other employment at West Tulsa and suggested that plaintiff in error endeavor to procure the work. Had he obtained the employment it was to be his own contract and he would not have been in the employment of defendant in error. He did not obtain the other work. After he had completed the work upon which he was engaged when Shervington was at West Tulsa, he wired the company at Chicago as follows: "Job completed. Waiting on instructions. No mail delivery tomorrow." On the same day he received the following reply: "Shervington left instructions with you for you to safely store all equipment and proceed home. Send completed report for Tulsa and Sand Springs soon as possible. We will send further job instructions to your home in Plymouth." Plaintiff in error stored the equipment as directed and he and his wife started with Blazedale in his automobile for their home in Plymouth. No question is raised but that they traveled the most direct and usual route from West Tulsa to Plymouth. On the way home, near Lafayette, Indiana, the automobile collided with another vehicle, injuring plaintiff in error's right arm and necessitating its severance two inches above the elbow. He was taken to the hospital at Lafayette and while there sent a report of his transportation expenses. It was computed on a mileage basis of travel by train from West Tulsa to Plymouth via Chicago. Defendant in error paid the claim.

The general rule is that injuries sustained by employees when going to or returning from their regular place of work are not deemed to arise out of and in the course of their employment. (*Public Service Co.* v. *Industrial Com.* 370 Ill. 334; *Dambold* v. *Industrial Com.* 323 id. 377.)

Ordinarily, the hazards employees encounter in going to and returning from their regular place of work are not incident to the employers' business. However, the general rule is subject to exceptions which must depend upon the employment and circumstances of the particular case. (*Fairbank Co.* v. *Industrial Com.* 285 Ill. 11; *Porter Co.* v. *Industrial Com.* 301 id. 76.) In the latter case, the business of the employer was located in Ottawa. The employee had been out of that city on business for his employer. When returning to the office to make his report he stopped, on the way, at his home for lunch and, after he left his home in going to the office, was injured. It was held that the fact he was on his way to the office to make a report of his sale and to receive instructions as to his duties for the following week was sufficient to show he was within the line of his employment when the accident occurred. Also, see *Irwin-Neisler & Co.* v. *Industrial Com.* 346 Ill. 89; *Solar-Sturges Manf. Co.* v. *Industrial Com.* 315 id. 352.

The nature of plaintiff in error's employment was such that it required him to be absent from the company's place of business when so employed. It was necessary that he have some definite place to which he returned when a contract was finished, that the defendant in error could communicate with him. The evidence shows that was the practice followed for some time and the directions contained in the telegram for him to proceed to his home is in accord with what was the previous practice. One of the incidents of plaintiff in error's employment appears to have been the quick availability with which plaintiff in error's services could be obtained. The evidence shows that while working on a contract at Mooseheart, Shervington took him by automobile to Woodstock. Before the Woodstock contract was fully completed, he was directed to report to the Chicago office immediately after it was finished. He arrived at the Chicago office on Saturday and was directed

to proceed at once to West Tulsa and be there the following Monday.

Defendant in error contends that the fact that plaintiff in error was at liberty while at West Tulsa to take another contract is conclusive evidence that when the job at West Tulsa was completed he was no longer in its employment. Such fact is not material, for he did not accept the other employment and, after he had completed the work, there was the exchange of communications between the employer and employee evidencing an understanding that plaintiff in error was to proceed according to the directions contained in the telegram. The fact that Shervington had discussed with plaintiff in error the possibility of his going from West Tulsa to Kansas to work and the uncertainty of such employment, furnished ample reason for plaintiff in error's telegram asking for directions as to where he should go. In view of the character of employment, and the facts and circumstances shown, there was ample evidence in the record to support the finding of the commission, and the circuit court erred in setting it aside.

The judgment of the circuit court is reversed and the finding and award of the commission is confirmed.

*Judgment reversed; award confirmed.*