Robert M. Sjostrom, Appellee and Cross-Appellant, v.
John H. Sproule, Cross-Appellee, and John Scott
and International Shoe Company, a Corporation,
Appellants.
Robert M. Sjostrom, Appellant, v. John H. Sproule, et
al., John H. Sproule, Appellee.

Gen. Nos. 48,484 and 48,488.

First District, Second Division.

January 30, 1962.

Rehearing denied March 20, 1962.

338

Hinshaw, Culbertson, Moelmann & Hoban, all of Chicago (John M. Moelmann, Oswell G. Treadway, and Karl M. Tippet, of counsel), for John Scott and International Shoe Company, defendants-appellants.

Smith and Munson, and Arthur S. Walter, all of Chicago (Simon Herr, of counsel) for Robert M. Sjostrom, plaintiff-appellee and cross-appellant. Kirkland, Ellis, Hodson, Chaffetz & Masters, all of Chicago (Charles M. Rush and John M. O'Connor, Jr., of counsel), for John H. Sproule, defendant-appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court:

Plaintiff Robert M. Sjostrom sued to recover damages for personal injuries sustained when an automobile in which he was riding, owned and being driven by defendant John H. Sproule, collided with another automobile owned by defendant International Shoe Company, a corporation, and being driven by defendant John Scott. The complaint consists of three counts: count 1 was directed against defendant Sproule, charging him with negligence as well as wilful and wanton misconduct in the operation of his car; count 2 was directed against defendant Scott; count 3 against defendant International Shoe Company. At the close of the evidence, the court allowed the motion of defendant Sproule for a directed verdict, holding that plaintiff and Sproule were both employees of Armour and Company, and that the accident arose out of and in the course of their employment, it having been stipulated that Armour and Company was under the Workmen's Compensation Act of Illinois (Ill Rev Stats 1961, c 48, §§ 138.1–138.28). Also at the close of the evidence, plaintiff withdrew paragraph 7 of count 2 (the wilful and wanton charges), and agreed that the corresponding wilful and wanton

charges of count 3 be stricken, and it was so ordered. Motions of defendants Scott and International Shoe Company for directed verdicts were denied. The jury returned a verdict finding these defendants guilty and assessing plaintiff's damages in the amount of $15,000.00, upon which judgment was entered. Two separate appeals were taken: one by defendants Scott and International Shoe Company, contending that the dismissal of Sproule was in error, and urging in addition that the court should have directed a verdict in their favor or that, in any event, the verdict against them was contrary to the manifest weight of the evidence and that the court erred in refusing to grant them a new trial; and a cross-appeal by plaintiff Sjostrom, advancing a like contention as to Sproule, but arguing that the judgment against defendants Scott and International Shoe Company should be affirmed.

Armour maintained its principal engineering department at 43rd Street and Racine Avenue in the Chicago Stock Yards. Sjostrom was a civil engineer who had been employed by Armour since 1946; Sproule, a mechanical engineer employed since 1929. About March 1952 Sjostrom was assigned to supervise the construction of a company plant in Bradley, Illinois; he was responsible for having the plans and specifications carried out, and for expediting the work. In September 1952 Sproule was assigned to the job by the chief engineer; he was responsible for overseeing the installation and co-ordination of machinery, boilers, and pharmaceutical equipment. Both worked there full time continuously from the date of their assignments until the date of the accident here involved, and communicated with the principal office by telephone or mail. Both men lived in Chicago, Sjostrom at 10807 South Church Street, Sproule at 7516 South Cornell Avenue. They traveled daily be-

341

tween their homes and Bradley, which is south of Chicago and about six miles north of Kankakee; the distance from Sjostrom's home to the scene of the accident was between nine to ten miles, and that, in turn, was from thirty-two to thirty-five miles from the plant at Bradley.

On job assignments at some distance from the main-office, Armour assumed the transportation costs incurred by its employees. From the beginning of his Bradley assignment, Sjostrom, for the most part, used a company car for transportation. During the first two weeks of his assignment, Sproule used his personal car for transportation; then Blanding, the over-all supervisor on the Bradley construction job and Sjostrom's immediate superior, advised Sproule that he wanted to eliminate the duplicate travel expense, and he thought Sjostrom and Sproule should share the company car. Thereafter, plaintiff and Sproule drove together in the company car until about November 24, 1952, when mechanical trouble developed. Sjostrom was absent from work that day, and Sproule called him that evening to tell him the company car was not running and arranged to pick him up in his personal car in the morning and drive him to Bradley. This use of Sproule's car continued for about seven days, or until the date of the accident. After the company car was "laid up," Blanding told Sjostrom he would get a car replacement, and during this interim period advised Sproule that he was going through the office routine of getting the men another company car, that it required the approval of certain officials, that he was going to put the order through, and that it would take some time.

Several days before the occurrence in question there had been a heavy snow which was packed on the pavement, and the night before the accident four or five inches more snow had fallen. However, by morn-

ing the temperature had moderated, there was considerable thawing, snow mixed with rain was falling, and visibility was poor. The highway was covered with slush and ice, except in the ruts where cars had been traveling where the bare concrete was visible.

On the morning of the accident, while they were proceeding south on Crawford Avenue, plaintiff complained to Sproule about his driving. He testified that at 124th and Crawford there was a viaduct over the Belt Railroad, over which Sproule drove at seventy miles an hour, that he told Sproule, " 'for the love of Mike,' or words to that effect, 'slow down, this is too fast' "; that Sproule did slow down because there was a stop sign at 127th; that between 159th and the place of the accident, approximately 16400 south, there was a slight curve and rise, and that as they got to the top of the rise they were going about sixty miles an hour, and so continued down the slope. According to plaintiff, he "yelled" at Sproule, "for God's sake, slow down or let me out," but he testified that Sproule did not slow down, and plaintiff did not further insist on being let out. Near the bottom of the slope they caught up with a southbound tractor-trailer truck operated by William Winling. Plaintiff testified that when they came up behind this truck, Sproule turned into the northbound lane and went around the truck at about sixty to sixty-five miles per hour. When they were about half-way back in the southbound lane, Sproule's Buick, which was traveling in excess of sixty miles per hour, started to skid. After that, plaintiff had no knowledge of what happened—he was rendered unconscious in the accident.

A witness, John Ennis, was driving his Plymouth north on Crawford at thirty to thirty-five miles an hour. The defendant Scott, driving a Chevrolet belonging to the International Shoe Company, was also proceeding north, about 100 feet behind the Plymouth,

343

which he had been following at that distance for about two miles. According to Ennis, after the Buick had passed the truck it started to pull into its proper lane but the back wheels got caught in the slush in the center of the highway and the car started to "side-slip" toward him. He was able to turn sufficiently to his right to avoid being hit by the Buick. He estimated the speed of the Buick at the time it passed him at fifty miles an hour. After the Buick passed the Plymouth, it spun around and proceeded at a forty-five degree angle to collide head-on with the left front of the Chevrolet. After the impact, the Buick continued to spin around; the plaintiff was thrown out onto the northbound traffic lane, at a point eight or ten feet behind the Chevrolet; the Buick motor, which had apparently broken loose from the force of the impact, rolled up into the yard of a farmhouse on the west side of the highway; and defendant Sproule was thrown out onto the west shoulder of the highway. The Buick finally came to rest in a ditch on the east side of the highway, facing southwest at a point about thirty to forty feet to the south of the Chevrolet. The force of the impact pushed the Chevrolet partly off the pavement and badly damaged the front end. The driver, Scott, was pinned behind the wheel of the car. Following the occurrence, plaintiff and defendants Sproule and Scott were taken to the Ingalls Memorial Hospital in Harvey.

■ From a careful examination of the record, we find no evidence tending to prove, or from which it could be inferred, that Scott or International Shoe Company was guilty of any negligence that was a proximate cause of the occurrence complained of, or of the injuries sustained by plaintiff. Scott was proceeding north in his proper lane on Crawford Avenue on a two-lane highway. The precarious condition of the highway and the murky weather have already been

set forth. Scott had been following at a distance of approximately 100 feet behind Ennis' car for about two miles; his windshield wipers were operating. According to the evidence, both Scott and Ennis were maintaining a speed of about thirty miles an hour. There is nothing to indicate, nor from which it could be inferred, that Scott should have had any reason to anticipate, under the prevailing driving conditions, that Sproule would drive his Buick into the northbound lane on a curve and pass a southbound tractor trailer at about fifty to sixty miles an hour; rather, Scott had a right to assume that Sproule would not do so, but that he would keep within his lane and drive carefully.

At the speed at which Sproule was driving, everything happened rapidly. Scott did not become aware of the presence of the Buick until it loomed up directly in front of him at a forty-five degree angle. At that moment there was nothing he could do to prevent the collision. As a result of the accident, Scott was knocked unconscious and pinned against the steering wheel of his Chevrolet. Winling, the driver of the trailer truck, was in an advantageous position to observe the occurrence, but he was unable to give any definite testimony since, as he testified, "actually, it happened so fast." When asked where the Buick was at the time of the accident, he replied, "Right before the accident, I don't know. I actually can't say. He was spinning around in the road; . . . I mean, I am not going to say where he was because I can't tell the truth and say where he was." The evidence shows that Scott, as well as plaintiff, was helpless in the situation, and had no opportunity to escape. Counsel for plaintiff argues that Scott never tried to avoid the accident, never pulled off the road to the gravel shoulder, but the occurrence happened so suddenly he obviously had no time to do so. Cer-

tainly the accident was not caused by any negligence on the part of Scott, and accordingly we are convinced that the court should have so held as a matter of law.

The principal remaining question is whether the court erred in dismissing Sproule as a party defendant. This decision was based solely on the relationship of plaintiff and Sproule as fellow employees of Armour under and by virtue of the provisions of the Workmen's Compensation Act (§ 138.5). In entering the dismissal order, the trial judge specifically advised the jury that the court "does not infer nor should the action of the Court be construed as inferring in any way that the said John H. Sproule was or was not guilty of negligence which proximately caused or contributed to bringing about the accident described in the evidence."

In an exhaustive article, Injuries Arising Out Of and In the Course Of the Employment, 1957 U Ill LF 191, the author, Irving M. Greenfield, writes (p 191 & nn 1, 2, & 3, & p 192 & n 4):

"Before an accidental injury may be deemed to come within the purview of the Workmen's Compensation Act of Illinois,[1] it must be shown that the accident arose both 'out of' and 'in the course of' the employment. Both elements must be coexistent, and either one without the other would not suffice to render the case compensable. The two requisites are by no means synonymous and should not be confused. An accident can be said to 'arise out of' the employment when it results from a risk reasonably incidental to the employment, and it 'arises in the course of' the employment when it occurs within the period of employment at a place where the employee may

"[1] Ill Rev Stats c 48, §§ 138.1–138.28 (1955).

reasonably be required to be while in the discharge of his duties, or engaged in some activity reasonably incidental to his work.[2] In other words, the term 'arising out of' deals with the origin or cause of the accident, while the term 'in the course of' refers to the time, place, and circumstances under which the accident takes place.[3]

"The test usually adopted by the courts in determining whether an injury arose 'out of' the employment is whether, upon the consideration of all the circumstances, it is apparent to the rational mind that a causal connection exists between the condition under which the employee is required to carry on his work and the resulting injury; and it occurs 'in the course of' the employment if, at the time of the injury, the employee is performing a duty which he is employed to perform, or is doing something incidental thereto, within the period of the employment and at a place where he may reasonably be required to be in the discharge of his duties.[4]"

"[2] Christian v. Chicago & I. M. Ry., 412 Ill 171, 105 NE2d 741 (1952); Hill-Luthy Co. v. Industrial Comm'n, 411 Ill 201, 103 NE2d 605 (1952); Chicago Hardware Foundry Co. v. Industrial Comm'n, 393 Ill 294, 65 NE2d 778 (1946); Board of Educ. v. Industrial Comm'n, 321 Ill 23, 151 NE 499 (1926); United States Fuel Co. v. Industrial Comm'n, 310 Ill 85, 141 NE 401 (1923); Chicago, Wilmington & Franklin Coal Co. v. Industrial Comm'n, 303 Ill 540, 135 NE 784 (1922); Eugene Dietzen Co. v. Industrial Bd., 279 Ill 11, 116 NE 684 (1917).

"[3] Olson Drilling Co. v. Industrial Comm'n, 386 Ill 402, 54 NE2d 452 (1944); Clark v. Industrial Comm'n, 356 Ill 641, 191 NE 209 (1934); Herald Printing Co. v. Industrial Comm'n, 345 Ill 25, 177 NE 701 (1931).

"[4] Loyola University v. Industrial Comm'n, 408 Ill 139, 96 NE2d 509 (1951); Fischer v. Industrial Comm'n, 408 Ill 115, 96 NE2d 478 (1951); Illinois Country Club, Inc. v. Industrial Comm'n, 387 Ill 484, 56 NE2d 786 (1944)."

Greenfield's interpretation of the statute and the tests applied are fully sustained by the decisions cited.

 The Supreme Court of Illinois has frequently had occasion to consider this phase of the Workmen's Compensation Act, and has consistently applied the rule that an employee whose duties are confined to the premises of the employer, and do not begin until he gets there and terminate when he leaves, is not entitled to recover for injuries sustained in an accident occurring while he is going to or returning from work. There are exceptions to this rule; for example, if the employee's duties require him to travel from place to place, as in the case of a traveling salesman, the employee is deemed to be in the course of his employment from the time that he leaves his home and until he returns. Numerous reported cases deal with factual situations illustrating these exceptions to the general rule: Benjamin H. Sanborn Co. v. Industrial Commission, 405 Ill 50, 89 NE2d 804 (1950); General Concrete Const. Co. v. Industrial Commission, 375 Ill 483, 31 NE2d 963 (1941); Scott v. Industrial Commission, 374 Ill 225, 29 NE2d 93 (1940). These cases hold in effect that even where the employee's duties are limited to the employer's premises, if in going to or returning from work he is exposed to a special risk incidental to the employment or is performing an act incidental or otherwise for the employer, although the accident occurs at some place away from the employer's premises, the accident may be deemed to have arisen out of and in the course of the employment.

 It is common knowledge that innumerable employees travel long distances to and from work, sometimes from one county to another, sometimes from one state to another, usually by auto. The test usually applied as to whether accidents occurring to employees

in the course of these travels are compensable is "whether the employee, when injured, was at a place where, by reason of his employment, he was required to be, or where he is subjected, by reason of his employment, to a hazard to which the public is not exposed or to which he, by reason of his employment, is exposed peculiarly and to a greater degree than the public." Payne & Dolan v. Industrial Commission, 382 Ill 177, 181–182, 46 NE2d 925 (1943).

In the case at bar Sproule testified that he was not directed by his supervisor "to haul" anybody in his own car, and that it was on his own initiative that he continued, after driving his own car, to pick up Sjostrom and take him back and forth to Bradley. Although an auditor for Armour testified that there had been no reimbursement to Sproule for any expenses incurred during the period just before the accident, Sproule testified that it was the practice of Armour, with respect to engineering projects out of Chicago, to reimburse the engineers for all expenses, including all forms of transportation, and special expenses of any kind, and that he was reimbursed at the rate of six cents per mile while he drove his Buick. In the instant proceeding, Sproule's principal defense is that he was allowed expense money for the use of his Buick in going to and from work, and that by reason thereof, his trip to Bradley, along with Sjostrom, arose out of and in the course of his employment. At the time of the accident in the instant case, Sproule and Sjostrom were at a place off the employer's premises, where the hazard to which they were exposed was the same and of the same degree to which the public was exposed, and as the court pertinently observed in the Payne & Dolan case (p 182), "it is not enough to say he would not have been at that place on the public highway if it had not been for his job, since the same can usually be said of the general public."

In Public Serv. Co. v. Industrial Commission, 370 Ill 334, 18 NE2d 914 (1938), a case squarely in point, Beckman had been employed by the Public Service Company for about twenty-five years. He worked in Blue Island, where he lived, until he was transferred to the company's new plant at Niles Center, many miles away. He continued to live in Blue Island, but was allowed sixty-seven cents per day to cover the cost of his transportation. The same arrangement was made with another employee, Habenicht, who took turns with Beckman in driving an automobile to work. While traveling home from work together, Beckman was killed in an automobile collision. The company contended that Beckman was through work, that his death did not occur in or arise out of his employment, relying on N. K. Fairbank Co. v. Industrial Commission, 285 Ill 11, 120 NE 457 (1918), wherein the court said (p 13):

"The Workmen's Compensation Act is designed to protect workmen and compensate them for injuries received while performing any duty necessary to be performed in the course of their employment or incident to it. It was not intended by this act that the employer who comes within the provisions of the act shall be the insurer of the safety of his employee at all times during the period of the employment. The employer is liable for compensation only for an injury which occurs to the employee while performing some act for the employer in the course of his employment or incidental to it. When work for the day has ended and the employee has left the premises of his employer to go to his home the liability of the employer ceases, unless after leaving the plant of the employer the employee is incidentally performing some act for the employer under his contract of employment. . . ."

In the Public Service case the court said (p 335):

> ". . . Beckman is not shown to have had any duties to perform away from the plant. Whether the sixty-seven cents was wages or expense money is immaterial. His death did not arise out of or in the course of his employment, and his employer is, therefore, not liable."

In consonance with these decisions, we hold that Sjostrom's injuries were not sustained and did not arise out of and in the course of his employment by Armour. Under the factual situation heretofore stated, he was a guest of Sproule; as such, Sjostrom's charge that Sproule was guilty of wilful and wanton misconduct should have been submitted to the jury.

Accordingly, we are of the opinion that judgment should have been entered, as a matter of law, in favor of defendants Scott and the International Shoe Company. The judgment as to them is therefore reversed, with directions that judgment be entered in their favor notwithstanding the verdict. As to Sproule, the judgment is reversed, and the cause remanded with directions to vacate the order of dismissal and to allow a trial as between Sjostrom and Sproule on the question of wilful and wanton misconduct.

Judgment as to John Scott and International Shoe Company reversed with directions; judgment as to John H. Sproule reversed, and cause remanded with directions.

BRYANT and BURKE, JJ., concur.