Robert M. Sjostrom, Plaintiff-Appellee, v. John H. Sproule, John Scott and International Shoe Company, a Corporation, Defendants. Appeal of John H. Sproule, Defendant-Appellant.

Gen. No. 49,124.

First District, Second Division.
June 2, 1964.
Rehearing denied June 23, 1964.

Kirkland, Ellis, Hodson, Chaffetz & Masters, all of Chicago (Charles M. Rush and John M. O'Connor, Jr., of counsel), for appellant.

Smith & Munson and Simon Herr, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

This is the second appeal in this case. On the first appeal we reversed the judgment directed for John H. Sproule, one of the defendants, and remanded the cause for a new trial. 34 Ill App2d 338, 181 NE2d 379. Sproule is now appealing from the $35,000 judgment entered against him upon the retrial without a jury. Initially plaintiff Sjostrom sued Sproule, who was driving the car in which the plaintiff was riding, John Scott and International Shoe Company, the driver and owner of the car with which the collision occurred on December 4, 1952. At the close of all the evidence in the first trial, Sproule was directed out on a separate affirmative defense that sec 5 of the Illinois Workmen's Compensation Act barred the action against him and the jury returned a $15,000 verdict for plaintiff and against the remaining defendants. These two defendants appealed from the judgment and the plaintiff cross-appealed from the part of the judgment entered on the directed verdict in Sproule's favor. We reversed the judgment against Scott and International with directions to the trial court to enter judgment in their favor and also reversed the judgment in Sproule's favor and remanded with directions to try the case between Sjostrom and Sproule on the question of wilful and wanton misconduct. We denied Sproule's petition for rehearing. Upon the remand, judgment was entered for Scott and International. Plaintiff and Sproule, hereinafter called the defendant, stipulated to waive a jury and to have the trial court hear the case on the same record without further evidence. This was done and defendant, by appropriate motions, raised the same separate affirmative defense. The

452

court entered judgment against him for $35,000. He appeals, relying on his separate affirmative defense.

The facts relating to the affirmative defense are uncontradicted. Armour & Co., the employer, was under the Workmen's Compensation Act of Illinois in 1952. This employer was self-insured. Its main engineering department was at 43rd Street and Racine Avenue in the Stockyards in Chicago. Plaintiff was a Civil Engineer who had been employed by Armour since 1946. Defendant, a Mechanical Engineer, had been employed by Armour since 1929. Defendant was in the main engineering department office. About March 1952, plaintiff was assigned to the plant in Bradley, Illinois, to represent Armour in the building of a plant there. His assignment was to see that the job was done according to the plans and specifications; generally to see that the job was expedited and that there were no delays that could be prevented by any coordinating he could do on the job. Defendant was assigned to the job by the Chief Engineer in September, 1952, and his responsibility was the overseeing and coordination of machinery, boilers and pharmaceutical manufacturing equipment. Both worked there continuously from the start of their assignment until the day of the occurrence on December 4, 1952. They did all their work there, communicating with the Chicago office by telephone or by mail. The customary working hours were the same as in the general office; either from between 8:00 a. m. and 4:30 p. m. or between 8:30 a. m. and 5:00 p. m. The working hours began at Bradley. Neither man punched a time clock. Both went back and forth to their homes in Chicago every day.

Bradley is about 6 miles north of Kankakee. Plaintiff lived at 10807 South Church Street, Chicago and defendant at 7516 South Cornell Avenue in Chicago. It was 9 or 10 miles from plaintiff's home to the scene of the mishap, which, in turn, was between 30

and 32 miles from the plant at Bradley. No public transportation was available that would take plaintiff from his home to Bradley. While the Illinois Central went right past the plant at Bradley, no trains stopped there in 1952. Defendant was familiar with the custom and practice of Armour with reference to engineering assignments away from Chicago. The custom and practice, with reference to reimbursement of expenses, was to reimburse the employees for all expenses involved in leaving the headquarters city. That included all forms of transportation, lodging, meals, tips, laundry if away from home for more than a week, telephone expenses, postal expenses and any special expenses the employee might have due to handling his employer's business. Travel expenses included an allowance for the use of the employee's own car. In 1952 that allowance was 6 cents a mile. This was the custom and practice that had existed as long as defendant had been with Armour and it existed at the time of the trial. Defendant had not been on any assignment where he was not reimbursed in the described manner.

After his assignment to Bradley in September 1952, defendant drove his own car for about 2 weeks. This car was the Buick involved in the accident. He was allowed and paid 6¢ a mile. During these two weeks he also received reimbursement for other elements of expense in Bradley; he charged his lunches to Armour and if he were there late in the evening, charged dinner to it. He did not at any time use any public transportation between his home and Bradley. He used his own car and later the company car. When plaintiff was assigned to Bradley, he drove most of the time in a company car. At one time, for a few days, Armour sent a man to Bradley who lived in plaintiff's neighborhood and plaintiff rode with him in his car. At other times plaintiff drove his own car. He never went by any other method than by auto-

mobile. Plaintiff, too, was reimbursed for driving his own car on the basis of 6¢ a mile. He obtained reimbursement by presenting a bill to the company offices in Chicago. That was his regular expense account. He was also reimbursed for other items. At the time defendant was assigned to the project in Bradley, plaintiff was driving a Ford car owned by Armour which was charged to the plaintiff. His expenses for gasoline and oil incurred in driving the company car were reimbursed to him at the end of a two-week period. In September 1952, about two weeks after defendant had been assigned to Bradley, the practice of driving his own car was changed. Mr. Blanding, the overall supervisor on the Bradley construction job and plaintiff's immediate supervisor, advised the defendant that he wanted to eliminate the duplicate expense; that plaintiff was driving a company car and that he thought defendant should ride with plaintiff to his home, then take the company car on over to defendant's home and in the morning come back and pick up plaintiff and come to Bradley. The supervisor preferred that both ride together in the company car. After the supervisor's directions, plaintiff and defendant drove to Bradley together in the company Ford until the week before the accident, when the company car had mechanical trouble. Then they drove in defendant's car. It took defendant 20 to 25 minutes longer to go from his home to the plant in Bradley if he had to pick up plaintiff on the way. During the period that both drove in the company car plaintiff still paid the bills and was reimbursed by Armour as he had been prior to the times defendant rode with him.

On the Monday before Thanksgiving plaintiff did not go to work and defendant drove the company car to Bradley. On the way home that evening an oil filter developed a leak. The motor overheated and burned some of the bearings. Defendant had difficulty

455

in driving to his home. He parked the company car in front of his house. He knew that the car would not be in condition to be driven to Bradley the next morning. He called a man in the automotive department of the general office, told him what had happened and suggested that he send someone to get the car with a tow truck and defendant said that on the next morning he guessed he would have to take his own car. Defendant called plaintiff that evening and told plaintiff that the Ford was not working. After a discussion defendant agreed to pick up plaintiff in the morning in his own car and drive plaintiff to Bradley. They agreed to go to Bradley that way. Defendant made the decision to use his own car starting the next day. He was not directed to haul anyone in his car. On his own initiative he picked up plaintiff and continued to take him back and forth from the job. This use of defendant's car continued until the accident—about 7 working days. During this time defendant picked up plaintiff in the morning, dropped him off in the evening and then drove to his own home. Defendant drove during these days, using the same route as when driving in the company car. Plaintiff had a car of his own but did not suggest at any time during that period that he drive it. Blanding, the overall supervisor on the job for Armour and plaintiff's superior, knew that plaintiff was driving with defendant in the latter's car during that period and did not at any time object to defendant driving his car.

The first day that defendant drove plaintiff in his car he saw the company supervisor at the plant and explained the difficulty that had been experienced with the company car the night before, advising the supervisor that he had driven his own car and would continue doing so until some arrangements could be made for another company car. Plaintiff also talked to the supervisor that day about getting another com-

pany car. The supervisor, Mr. Blanding, also said he would get another one as soon as one could be had. During the period when defendant was using his car Blanding discussed with him and plaintiff the obtaining of another car at that time and advised defendant that he was going through the procedure of getting them another car to drive. He did not say anything about how soon they could get another. Armour had what was called a construction repair order that had to be approved by certain officials before an expenditure of that nature could be made and Blanding advised defendant that he was going to put through this repair order. During the period before the accident when defendant was driving his car he applied for and received reimbursement from Armour for his travel expenses at 6¢ a mile. He could not tell when he turned in his expense account for the week including December 4, 1952; his department ran on periods of either four or five weeks and at the end of one of the periods his expense accounts were turned in. He did not know when he turned this one in but he was positive he had done so.

On April 9, 1953, defendant was reimbursed $70.16 for travel expenses. The manager of the general accounts department of Armour did not know what period that would cover. An expense account put in at any time before the four- or five-week period which preceded April 9th would have been paid in April. No other payment for travel expense was made to defendant between November 14, 1952 and April 9, 1953. The accident happened on December 4, 1952. Defendant did not return to work at Armour until February 15, 1953. It was while plaintiff and defendant were driving to Bradley in defendant's car that the accident took place. They were waiting for another company car to be assigned to them, as Blanding indicated it had been requested. The route followed was the same

457

as he had driven a number of times in the company car. According to Armour's records, medical payment for plaintiff and defendant were made by Armour. In the case of plaintiff these payments for hospital, ambulance, clinic, doctors and X-rays totalled $1,119.40; in defendant's case $1,020.69. None of the vouchers was issued to plaintiff. All were issued for the payment of medical expenses. It was the general procedure in the case of the salaried employee who was disabled because of an industrial accident to pay full salary on the basis of the rules that were in existence as to weeks of salary for years of service. The policy of Armour with regard to salaried employees who became injured was payment of one week's salary for every year of service. This policy was followed in the case of plaintiff. In such cases full salary was paid by the Salary Department, and generally the Casualty Department would receive a charge. It was a bookkeeping transaction for that portion of the salary which would represent weekly compensation payments. The entries for Workmen's Compensation are entries made from one department to another to charge part of the salary paid to the employee to the Casualty Department as compensation. The compensation charge mentioned was reflected on the record to the extent that the periods of time and amounts were posted there. The same was true in defendant's case. Armour's records showed compensation payments to defendant at the rate of $27.20 a week for a total of 9 weeks and 5 days; broken down into two payments of $89.37 and another of $174.86. Dr. Kapov was the medical director with Armour since December, 1952. He first saw plaintiff in connection with his duties as medical director. Plaintiff became Dr. Kapov's private patient when he was injured. The doctor was notified to go to the hospital by Armour. Before plain-

tiff returned to work Dr. Kapov made a report to the Casualty Department of Armour.

The defendant maintains that judgment should have been entered for him on his separate affirmative defense that the Workmen's Compensation Act bars a common-law action against a coemployee. It is the law of this State that the Workmen's Compensation Act precludes a common-law action against a negligent coemployee. O'Brien v. Rautenbush, 10 Ill2d 167, 139 NE2d 222; Rylander v. Chicago Short Line Ry. Co., 17 Ill2d 618, 161 NE2d 812. There is no dispute that Armour was under the Workmen's Compensation Act and that plaintiff and defendant were coemployees of Armour. In our previous opinion (34 Ill App2d 338, 181 NE2d 379) we found that plaintiff's injuries were not sustained and did not arise out of and in the course of his employment by Armour; that he was a guest of defendant and that plaintiff's charge that defendant was guilty of wilful and wanton misconduct should have been submitted to the jury. Plaintiff's theory on this appeal is that the prior appeal determined all issues now urged by defendant and that the former decision of this court is conclusive on the issues presented.

Defendant insists that the opinion on the first appeal was palpably erroneous and that under the undisputed law plaintiff's injuries arose out of and in the course of his employment. In Thomason v. Chicago Motor Coach Co., 298 Ill App 626, 19 NE2d 435 (abstract), the court in the full opinion said, page 3: "While ordinarily a question considered and determined on a prior appeal is deemed settled and not open to re-examination on a second appeal, this is not an inflexible rule, and if the prior decision is palpably erroneous it is not only competent for the court to correct it on second appeal, but it is its duty to do so."

See also Zerulla v. Supreme Lodge Order Mut. Protection, 223 Ill 518, at 520, 79 NE 160; Awotin v. Atlas Exchange Nat. Bank, 275 Ill App 530; 5B CJS, Appeal & Error, § 1964, page 556.

■■ After a careful reconsideration of the law applicable to the facts disclosed by the record we have decided that our former opinion is erroneous and would result in injustice to the defendant. Both parties were in the course of their employment at the time of the occurrence. They were on their way to their job site at the direction of their employer and in transportation furnished by the employer. The trend of recent decisions is to broaden the reach of the Workmen's Compensation Act. Dunham Co. v. Industrial Commission, 16 Ill2d 102, 156 NE2d 560, holds that a transportation risk arises out of the employment and that the employee would not have been exposed to the transportation hazard but for his employment. In the case at bar plaintiff and defendant were subjected to the hazards of the road because of Armour's furnishing transportation and its direction to use it. The furnishing of transportation by the employer is a well recognized exception to the rule that travel to and from work is ordinarily not within the Compensation Act. Angerstein in Illinois Workmen's Compensation (Rev Ed) Vol 1, Sec 406, recognizes the exception to the general rule that the employer is not liable for accidental injuries sustained by the employee away from the employer's premises while on the way to or from work where the employer provides a means of conveyance to or from work. In 99 CJS, Workmen's Compensation, sec 235, page 837, the author states: "This exception to the general rule has been held to be as well established as the rule itself, and to be supported by overwhelming authority . . . ."

As early as 1920, the Supreme Court recognized this exception in Schweiss v. Industrial Commission, 292 Ill 90, page 92, 126 NE 566. On the same day, the court also decided United Disposal & Recovery Co. v. Industrial Commission, 291 Ill 480, 126 NE 183. Therein the court denied compensation on the ground that the employees were not killed in the course of their employment nor did their deaths arise out of their employment. The court pointed out that there was no agreement to furnish the employees transportation from Cherry Valley to the farm. The court said, page 486: "While arrangements had been made for them to ride on the trucks from Rockford to the farm, it was no part of the contract of hire that they would be furnished transportation from their homes to the place of their employment." In United Disposal the court by inference said that if the employees had been riding between Rockford and the plant in the transportation furnished, compensation would have been payable.

In De Hoyos v. Industrial Commission, 26 Ill 2d 110, 185 NE2d 885 and Carr v. Industrial Commission, 26 Ill2d 347, 186 NE2d 280, decided since our previous opinion in this case, the court held that an injury sustained by an employee in a parking lot provided by the employer is compensable. These cases make clear that where the employer supplies something to an employee in connection with going to and coming from work that affirmative act on the part of the employer constitutes an exception to the general rule that injuries sustained going to and coming from work are not within the employment. Illinois' recognition of this exception follows the majority rule. To abrogate the exception in this case would furnish a precedent for depriving numerous employees, using transportation furnished by their employers, of their

461

established right to Workmen's Compensation. See also Cardillo v. Liberty Mut. Co., 330 US 469, pages 479–481; Shreve v. Hot Shoppes, Inc., 184 F Supp 436, affirmed 292 F2d 761; Watson v. Grimm, 200 Md 461, 90 A2d 180, pages 183, 184.

We agree with the defendant that the fact that the company car had been disabled and defendant's own car was being used temporarily (for which defendant was being reimbursed) until another company car could be obtained by Armour cannot change the legal effect. The employer was supplying the transportation as part of a contract of employment and the accidental burning out of a bearing cannot change the existing relationship. In Littlefield's Case, 126 Me 159, 136 A 724, the employee usually rode to work in a truck driven by the employer. On the day of the accident the employer arranged to have another employee drive Littlefield in his car. On the way, the employee left his car in a garage for repairs and proceeded in a car supplied by the garage and driven by a young man working at the garage. During the latter part of the trip the accident happened. In affirming an award of compensation, the court reviewed the applicable law. See also Heaps v. Cobb (Md), 45 A2d 73, pages 77, 78. In the case at bar, Armour, the employer of plaintiff and defendant, directed them to use the company transportation and later acquiesced in the use of defendant's car after the company car had been disabled. This acquiescence is sufficient to show that they were engaged in their employment. Department of Public Works v. Industrial Accident Commission, 128 Cal App 128, 16 P2d 777, page 779; Matlon v. Matlon, 92 Ind App 350, 175 NE 369, page 370; Stadler Fertilizer Co. v. Bennett, 124 Ind App 524, 119 NE2d 26, page 28. While plaintiff and defendant began their work when they reached the plant at Bradley their employment began when they entered the auto-

mobile. Swanson v. Latham & Crane, 92 Conn 87, 101 A 492; Miller v. Indemnity Ins. Co. of North America (La App), 121 So2d 581 and Littler v. George A. Fuller Co., 223 NY 369, 119 NE 554.

In our previous opinion we relied upon Public Service Co. of Northern Illinois v. Industrial Commission, 370 Ill 334, 18 NE2d 914. We overlooked the fact that in Public Service Company the company did not furnish a car and that it only paid the cost of transportation. In the instant case the transportation was furnished by agreement. In Public Service there was no such agreement. An examination of the briefs and abstract in Public Service shows the following significant differences: The employer did not furnish transportation; it was the custom of the department to which the employee was being transferred to allow railroad transportation only until he was actually transferred to its payroll. No allowance was to be made after the actual transfer. The employee could use any means of transportation he desired. He was not ordered to ride in an automobile with a coemployee. He was actually permanently transferred to the Niles Center payroll four days before the accident, and was receiving no reimbursement at the time of the accident. There was no evidence in that case that a company car was involved or that the employee had been directed to ride with any of his coemployees. The temporary additional compensation the employee received was limited to a temporary period while his permanent transfer to the Niles Center payroll was being effected and was the exact amount of public transportation by the Rock Island Railroad from Blue Island to Chicago and the elevated from Chicago to Niles Center. The employee's permanent transfer to the Niles Center payroll had been completed and he was no longer receiving this temporary compensation for four days before the accident occurred. We agree with

the defendant that our reliance on the Public Service Company case is misplaced. We conclude that the injuries suffered by plaintiff in the accident on the way to the job site in Bradley arose out of and in the course of the employment of plaintiff and defendant, and that under the holding in O'Brien v. Rautenbush, 10 Ill2d 167, 139 NE2d 222 and Rylander v. Chicago Short Line Ry. Co., 17 Ill2d 618, 161 NE2d 812, the plaintiff cannot maintain a common-law action against defendant.

For these reasons the judgment is reversed and the cause is remanded with directions to enter judgment in favor of John H. Sproule, defendant and against Robert M. Sjostrom, plaintiff.

Judgment reversed and cause remanded with directions.

FRIEND and BRYANT, JJ., concur.