2017 IL App (1st) 170155

FOURTH DIVISION
December 14, 2017

No. 1-17-0155

| | |
|---|---|
| XIAO LING PENG, | ) |
| | ) Appeal from |
| Plaintiff-Appellant, | ) the Circuit Court |
| | ) of Cook County |
| v. | ) |
| | ) 17-L-11447 |
| MARK NARDI, MOHAMMED KOUK, and LEI GUAN, | ) |
| | ) Honorable |
| Defendants | ) John P. Callahan, Jr., |
| | ) Judge Presiding |
| (LEI GUAN, Defendant-Appellee). | ) |

JUSTICE McBRIDE delivered the judgment of the court, with opinion
Justices Gordon and Ellis concurred in the judgment and opinion.

OPINION

¶ 1    Xiao Ling Peng, a restaurant worker, filed a negligence suit against her coworker, Lei Guan, and two other drivers, seeking damages for injuries she sustained in a three-car collision that occurred while Guan was driving restaurant employees to work in a van their employer provided for their commute. The trial court initially denied Guan's motion to dismiss, but later granted his motion to reconsider and then dismissed Peng's action as to Guan with prejudice and authorized her to take an interlocutory appeal. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Peng's allegations against the other two drivers are pending in the trial court. Peng contends the court erred in finding that a civil suit against her tortious coworker is barred by the exclusivity provision of the Illinois Workers' Compensation Act (820 ILCS 305(a) (West 2014)) (Act) because the commute was not part of her employment and she did not affirmatively elect the *de minimus* reimbursement for some medical expenses which her employer voluntarily paid directly

to one of her medical care providers. Guan responds that Peng misapprehends authority indicating her injury is work-related and exclusively compensable under the Act because the employer controlled Peng's transportation, and he also contends Peng is estopped from contradicting her worker's compensation claim. Peng replies that she filed for worker's compensation recently, in 2016, just before the statute of limitations ran, solely to protect her rights, but that her intention is to be compensated through the litigation she initiated in 2014, as evidenced by this appeal.

¶ 2    In 2014, Peng and Guan were co-employees of a Chinese and Japanese buffet restaurant owned and operated by Royal Illinois, LLC. Peng worked in the "back of the house," preparing food for the dim sum station and keeping the station tidy. Guan was a waiter. The restaurant was located in Hoffman Estates, Illinois, which is a community northwest of Chicago; and Peng, Guan, and a number of other Royal Buffet employees resided on the south side of Chicago, in the Bridgeview and Chinatown neighborhoods. The employer gave Guan the keys to a 15-seat 2010 Ford E350 passenger van to transport himself and other employees to and from the restaurant, paid him $600 a month for his driving duties, and covered the cost of fuel. The employer prohibited Guan from allowing anyone else to drive the van. The employer also prohibited Guan from making personal use of the vehicle and instructed him to leave the van parked when he was not transporting restaurant employees. The vehicle would be filled to capacity on weekends, but less full during the week. The employer would initially tell Guan where to pick up new employees, because he would not recognize them, but after that, Guan chose the pick-up and drop-off points, and he typically made three stops in Bridgeview and Chinatown. Guan also chose the specific route to take to and from work, based on prevailing traffic conditions.

¶ 3 The accident that caused injury to Peng occurred on Friday, June 20, 2014, at 10:20 a.m. when Guan was driving in Chicago on northbound I-90, in the far left lane, at or near its intersection with Harlem Avenue. (Three different accident dates appear in the record on appeal, and we have used the date written on the Illinois Traffic Crash Report.) Peng was asleep while seated in the third row of the van's four rows of seats. Despite "urgently braking," Guan struck the back of a 2008 Acura K1 being driven by Mohammed A. Kouk, who in turn struck the back of a Nissan van being driven by Mark A. Nardi. Guan's passengers suffered mostly minor injuries, with the worst appearing to be a deep facial cut. At the emergency room, Peng was diagnosed with "a muscle and tendon" injury in her left hip and discharged with a walker and painkillers. When the hip pain continued to be unbearable more than a month later, Peng went to the hospital and was diagnosed with a pelvic fracture. When she was deposed in August 2015, Peng said the medical treatment she received had only partially alleviated the pain.

¶ 4 An employee injured on the job normally cannot sue her Illinois employer or coemployee, provided the employee is entitled to receive worker's compensation benefits from the employer or its insurer. *Ramsey v. Morrison*, 175 Ill. 2d 218, 224, 676 N.E.2d 1304, 1307 (1997); *Illinois Insurance Guaranty Fund v. Virginia Surety Co.*, 2012 IL App (1st) 113758, ¶ 16, 979 N.E.2d 503. See 820 ILCS 305/5(a), 11 (West 2014). The Act is a comprehensive statute that compels an employer to pay for job-related injuries without being able to resort to the various defenses it could plead in a tort suit. *Illinois Insurance Guaranty Fund*, 2012 IL App (1st) 113758, ¶ 16, 979 N.E.2d 503. However, in return for disbursing prompt and no-fault compensation, the maximum amount the employer must pay is capped. *Illinois Insurance Guaranty Fund*, 2012 IL App (1st) 113758, ¶ 16, 979 N.E.2d 503. Thus, when an accident occurs, an employee is financially protected and the employer avoids the prospect of litigation

1-17-0155

and a potentially larger judgment in a common law action. *Meerbrey v. Marshall Field & Co., Inc.*, 139 Ill. 2d 455, 462, 564 N.E.2d 1222, 1225 (1990); *Fregeau v. Gillespie*, 96 Ill. 2d 479, 486, 451 N.E.2d 870, 873 (1983) (indicating the workers' compensation system "was designed to provide speedy recovery without proof of fault for accidental injuries"); 820 ILCS 305/11 (West 2014) (workers' compensation "shall be the measure of the responsibility of any employer").

¶ 5     A coemployee acting in the course of his employment who accidentally injures an employee is immune from a common law negligence action, in furtherance of the Act's underlying policy that the costs of industrial accidents be placed on the industry. *Ramsey*, 175 Ill. 2d at 227, 676 N.E.2d at 1308 (citing *Rylander v. Chicago Short Line Ry. Co.*, 17 Ill. 2d 618, 628, 161 N.E.2d 812, 818 (1959)). The purpose of the Act would be blunted if the costs of job-related injuries were shifted from one employee to another employee. *Rylander*, 17 Ill. 2d at 628, 161 N.E.2d at 818. The Illinois supreme court reasoned:

> " '[If coemployee immunity were not recognized] an employee who has inadvertently injured a fellow worker would be forced to bear the sole cost of defending and satisfying the common-law action without any part of the cost being passed on to the industry, since the common employer's liability is expressly limited to the compensation award. [Citation.] In view of the fact that a considerable portion of industrial injuries can be traced to the negligence of a coworker, such litigation could reach staggering proportions, and would not only tend to encourage corrupt and fraudulent practices but would also disrupt the harmonious relations which exist between coworkers. The avoidance of such results is most certainly beneficial to the employee.' " [Citations.] *Ramsey*, 175 Ill. 2d at 227-28, 676 N.E.2d at 1309.

¶ 6    Also:

> " 'The principle behind this legislation was that the business enterprise or industry should directly bear the costs of injury to its employees in the same manner as the enterprise has always borne the costs of maintaining and repairing its plant, machinery and equipment.
>
> * * *
>
> If [the Act] were construed to withhold immunity to a coemployee from a negligence action, the cost of injury to an employee of the business would be shifted from the employer, where the Act places it, to a fellow employee, where the Act does not place it. *** We cannot believe the legislature intended to permit the ultimate costs of employee injury to be borne by fellow employees, whether negligent or not.' " *Ramsey*, 175 Ill. 2d at 228-29, 676 N.E.2d at 1309 (quoting *Madison v. Pierce*, 478 P.2d 860, 863-64 (Mont. 1970)).

¶ 7    "So far as persons within the industry are concerned, the *** Act eliminated fault as a basis of liability." *Rylander*, 17 Ill. 2d at 628, 161 N.E.2d at 818.

¶ 8    Section 5(a) of the Act, which is known as the exclusivity provision, expressly bars common law actions for injuries that come within the scope of the Act, by stating "No common law or statutory right to recover damages from *the employer* *** or the agents *or employees* of *** [the employer] for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act." (Emphases added.) 820 ILCS 305/5(a) (West 2014). An employee can escape the exclusivity provision and proceed with civil litigation against an employer and/or coemployee only if the employee can allege and prove the injury (1) did not arise from his or her employment; (2) was not received during the course of employment;

(3) was not accidental, such as an intentionally inflicted injury; or (4) was not compensable under the Act, such as being discharged in retaliation for filing a claim for worker's compensation. *Meerbrey*, 139 Ill. 2d at 463, 564 N.E.2d at 1226; *Fredericks v. Liberty Mutual Insurance Co.*, 255 Ill. App. 3d 1029, 1031, 627 N.E.2d 782, 785 (1994) (the broad immunity granted by the exclusive remedy section of the workers' compensation statute may be overcome in actions involving intentional torts by the employer or claims for retaliatory discharge for filing a compensation claim).

¶ 9       As a general rule, an accident occurring while an employee is traveling to or from work is not considered to have arisen out of or occurred in the course of employment, for purposes of the exclusive remedy provision of the Act. *Hall v. DeFalco*, 178 Ill. App. 3d 408, 413, 533 N.E.2d 448, 452 (1988) (citing *Hindle v. Dillbeck*, 68 Ill. 2d 309, 318, 370 N.E.2d 165, 169 (1977), *Stevenson Old Sales & Service v. Industrial Comm'n*, 140 Ill. App. 3d 703, 705, 489 N.E.2d 328, 330 (1986), *Sloma v. Pfluger*, 125 Ill. App. 2d 347, 356, 261 N.E.2d 323, 327 (1970), and *Sjostrom v. Sproule*, 49 Ill. App. 2d 451, 460, 200 N.E.2d 19, 24 (1964), *aff'd* 33 Ill. 2d 40, 210 N.E.2d 209 (1965)).

¶ 10      An exception to this rule exists, however, when the employer provides a means of transportation to or from work or affirmatively supplies an employee with something in connection with going to or coming from work. *Hall*, 178 Ill. App. 3d at 413, 533 N.E.2d at 452 (citing *Hindle*, 68 Ill. 2d at 320, 370 N.E.2d at 169, and *Sjostrom*, 49 Ill. App. 2d at 460-61, 200 N.E.2d at 24). Employers are sometimes motivated to provide transportation for employees to and from the workplace, *i.e.*, vanpools, in order to recruit and retain employees or when parking space at the job site is limited. *Thayer v. State*, 653 N.W.2d 595, 599 (Iowa 2002). Larson's treatise indicates the basis for imposing liability on the employer through the workers'

compensation system is that the employer has controlled the conditions of transportation. 2 Lex K. Larson & Thomas A. Robinson, Workers' Compensation Law § 15.01, at 15-2 (2017) ("If the trip to and from work is made in a truck, bus, car, or other vehicle under the control of the employer, an injury during that trip is incurred in the course of employment.") When the employer takes control of an employee's transportation, the employer "has extended the risks of employment and therefore has extended the course of employment." *Torres v. Industrial Comm'n,* 137 Ariz. 318, 321, 670 P.2d 423, 426 (Ariz. Ct. App. 1983), *Smithey v. Hansberger*, 189 Ariz. 103, 104, 938 P.2d 498, 499 (Ariz. Ct. App. 1996) (nuclear power plant employee was acting within scope of his employment while driving an employer-provided vanpool and involved in a rollover accident, so only remedy available to his injured coworkers was workers' compensation). "By providing a vehicle for traveling to and from work, the employer ' "has, in a sense, sent the employee home on a small ambulatory portion of the premises." ' " *J.D. Dutton, Inc. v. Industrial Comm'n*, 584 P.2d 1190, 1192 (Ariz. Ct. App. 1978) (quoting 1 Arthur Larson, The Law of Workmen's Compensation § 17.10 at 4-129 (1978)); *Johnson v. Farmer*, 537 N.W.2d, 770, 772 (Iowa 1995) ("when an injury occurs while a worker is being transported to an intended place of employment in a vehicle owned by the employer, the latter's control over that situation makes the vehicle an extension of the work place") (citing 1 Arthur Larson, Larson's Workmens' Compensation Law § 17.00, at 4-209 (1995)).

¶ 11    Illinois law provides numerous examples of this scenario, a few of which are helpful here. In *Hall*, an accident occurred after an employee finished his shift at a McDonald's restaurant in Winnetka, Illinois, and the restaurant manager was driving him to the local CTA train station. *Hall*, 178 Ill. App. 3d at 410, 533 N.E.2d at 450. As the truck approached the CTA stop, it veered off the road and crashed into a building, causing them injuries. *Hall*, 178 Ill. App.

3d at 409, 533 N.E.2d at 449. Although the manager was not driving a company vehicle, and the employee perceived the ride as a personal courtesy rather than a job perk, one of the manager's daily work duties was to transport employees, and he did so in furtherance of McDonald's interests. *Hall*, 178 Ill. App. 3d at 410, 533 N.E.2d at 450. Thus, when the worker attempted to sue, the courts determined the employee's injury arose out of or in the scope of employment and was compensable under the Act, rather than through tort litigation against the manager. *Hall*, 178 Ill. App. 3d at 414, 533 N.E.2d at 452.

¶ 12    Section 5(a) of the Act also barred negligence actions in *Hindle* regarding the death of one crew member and serious injuries to another that occurred when their crew leader was using her father's pick-up truck as part of her regular duties to supervise and transport her teenaged crew to and from the northern Illinois corn fields where they detasseled corn. *Hindle*, 68 Ill. 2d 309, 370 N.E.2d 165. When the crew leader applied the truck's brakes on a gravel road, the vehicle swerved, skidded, left the road, and struck a utility pole. *Hindle*, 68 Ill. 2d at 313-14, 370 N.E.2d at 166. The passengers were in the back of the pickup, which had been outfitted for them with two lawn chairs and an old truck seat. *Hindle*, 68 Ill. 2d at 312, 370 N.E.2d at 166. The crew leader was required to provide her crew's transportation and received additional pay for the transportation duties. *Hindle*, 68 Ill. 2d 309, 370 N.E.2d 165. The court indicated it was irrelevant whether the crew members were paid for their time while being transported to or from the corn fields (*Hindle*, 68 Ill. 2d at 320, 370 N.E.2d at 169), making this case similar to *Hall*, in which the McDonald's employee had clocked out before departing for the train station. *Hall*, 178 Ill. App. 3d at 410, 533 N.E.2d at 450. The employer controlled the conveyance and had expanded the risks of employment. *Hindle*, 68 Ill. 2d at 320, 370 N.E.2d at 170. Common law

negligence actions against the employer, the crew leader, and the truck owner were all barred by section 5(a). 820 ILCS 305/5(a) (West 2014); *Hindle*, 68 Ill. 2d at 313, 370 N.E.2d at 166.

¶ 13 Another illustration of the employer-conveyance or employer-control principle is found in *Sjostrom*, in which a civil engineer and a mechanical engineer employed in the Stockyards neighborhood of Chicago were temporarily assigned to supervise construction of a new plant that was south, near Kankakee, Illinois, and were reimbursed for travel expenses. *Sjostrom*, 49 Ill. App. 2d at 453, 200 N.E.2d at 21. Their employer instructed them to commute together in either a company car or personal car in order to avoid reimbursing a duplicate travel expense. *Sjostrom*, 49 Ill. App. 2d at 455, 200 N.E.2d at 22. During one such joint commute using the mechanical engineer's car, their vehicle collided with another, and they were both seriously injured. *Sjostrom*, 49 Ill. App. 2d at 457, 200 N.E.2d at 23. The passenger sued his coworker; however, the court found the passenger's injuries arose out of and in the course of his employment and that his common law action was barred by the Act. *Sjostrom*, 49 Ill. App. 2d at 460, 200 N.E.2d at 24. The passenger would not have been exposed to the "hazards of the road" but for his employment and his employer's provision for transportation to the job site. *Sjostrom*, 49 Ill. App. 2d at 460, 200 N.E.2d at 24. The court noted that employer-provided conveyance is a "well recognized exception to the rule that travel to and from work is ordinarily not within the [Act]." *Sjostrom*, 49 Ill. App. 2d at 460, 200 N.E.2d at 24. " 'This [well recognized] exception to the general rule has been held to be as well established as the rule itself, and to be supported by overwhelming authority ***.' " *Sjostrom*, 49 Ill. App. 2d at 460, 200 N.E.2d at 24 (quoting 99 C.J.S. *Workmen's Compensation* § 235, at 837). On further appeal, the supreme court affirmed and emphasized the distinction between employee trips that are based on personal decisions (not compensable through workers' compensation) and travel in which the employer has controlled

the method of travel (exclusively compensable through workers' compensation). *Sjostrom*, 33 Ill. 2d at 43, 210 N.E.2d at 211.

¶ 14 With these concepts in mind, we consider the allegations that were made in this case and the rulings which led to this appeal.

¶ 15 Peng initially sued only the two other drivers in 2014, but filed amended pleadings to include her employer and coworker. In her second amended complaint, Peng alleged that Guan was operating the van within the scope of his employment and that this rendered their employer, Royal Illinois, vicariously liable for Guan's negligent driving. According to the authority we discussed above, if Guan was acting within the scope of his employment when his negligence injured Peng, she would have no remedy against him other than worker's compensation benefits. Royal Illinois and Guan sought dismissal on grounds that the workers' compensation system was the exclusive source of an employee's relief against an employer and coemployee for a work-related injury. The dismissal motion was supported by an affidavit from the assistant manager of Royal Illinois, Linda Chen, who swore that Guan was driving the van for a work-related purpose and acting within the scope of his employment when the accident occurred. Chen also swore that the company had workers' compensation insurance coverage in effect from Travelers Insurance. The trial court dismissed the second amended complaint without prejudice and granted Peng leave to amend.

¶ 16 In her third amended complaint, which is the version at issue on appeal, Peng omitted any mention of Royal Illinois, sued the three drivers, and alleged only that she was a passenger in a van that Guan was driving when he negligently caused the multi-vehicle accident with Nardi and Kouk. Guan repeated his earlier arguments for dismissal. Peng, countered, however, that the third amended complaint should survive because she and Guan worked together in the restaurant,

but he had a separate job as a van driver; and Peng's commute with Guan was not required by her employer, was not compensated time, and was not work-related. The trial court apparently found this argument persuasive. We cannot summarize the court's reasoning because there is no transcript of the hearing and the written order denying Guan's motion to dismiss contains no findings or basis for the denial. According to Peng, the trial court concluded that she was not in the course of her employment at the time of the accident. The court scheduled discovery and other deadlines in preparation for trial.

¶ 17    Less than a month later, Guan filed a motion to reconsider the denial of his motion to dismiss, again arguing that the workers' compensation system was the exclusive source of an employee's relief against her coworker for a work-related injury. Guan argued that it was indisputable that Peng was an employee acting within the scope of her employment, and he relied in part on "newly discovered" evidence that Peng had filed a worker's compensation claim which had been accepted by Royal Illinois and its insurer, Travelers Insurance. Guan tendered correspondence from Travelers Insurance, confirming that Peng filed a worker's compensation claim and that the insurer opened a claim file, determined Peng's injuries were compensable, and paid some of her medical bills. Guan said it appeared Peng's worker's compensation claim had been closed only because she failed to submit her additional medical bills, but that her lack of diligence in complying with a requirement under the Act did not entitle her to maintain a tort claim against her employer or co-employee. One of Guan's other new exhibits was a screenshot from a webpage maintained by the Illinois Workers' Compensation Commission, which indicated that Ming Cheng, whose name appeared on the Illinois accident report as one of Guan's passengers, had also filed a worker's compensation claim and that Travelers Insurance had settled the claim, thus conceding that Guan's accident was work-related. Guan also attached

previous exhibits (not "newly discovered"), including Peng's interrogatory answer acknowledging she "filed a [worker's compensation] claim for and/or receive[d] *** worker's compensation benefits;" the accident report bearing Cheng's name; and the Chen affidavit indicating Guan and Peng were coworkers and that Travelers Insurance was the employer's workers' compensation carrier.

¶ 18   The trial court did not immediately rule on the motion for reconsideration and instead entered and continued it for approximately three weeks "for Plaintiff to show work comp case dismissed." According to Peng, this abbreviated statement indicates the trial court took the unusual step of ordering Peng to dismiss her worker's compensation action so as to proceed only on her civil complaint. As discussed below, the record is ambiguous, at best, as to Peng's contention. The record shows that a few weeks later, the trial court was informed that Peng had not dismissed her workers compensation claim and the parties presented arguments on the motion to reconsider. At the conclusion of the hearing, the trial court granted Guan's motions to reconsider and dismiss.

¶ 19   On appeal, Peng first addresses the trial court's decision to grant Guan's motion for reconsideration, then responds to the trial court's ruling on the motion to dismiss, and then concludes her appellate brief by arguing that it was an abuse of discretion for the trial court to order her to dismiss her compensation claim before the Workers' Compensation Commission. Rather than jumping back and forth through the proceedings as Peng has done, in the interests of clarity and efficiency, we will address the three rulings in their chronological order.

¶ 20   We start with Peng's contention that the judge declined to stay the civil suit pending the outcome of Peng's worker's compensation action and instead committed reversible error and exceeded the scope of his authority by ordering her to dismiss her compensation claim.

¶ 21 We find that Peng's argument lacks support in the record, as there is no indication she requested or was denied a stay of the proceeding and the record is ambiguous as to whether the judge ordered Peng to dismiss her compensation claim. Unless Peng asked the trial court to enter a stay and gave the trial court legal grounds for doing so, there is no basis for us to conclude that the judge erred in rejecting her argument. Furthermore, the order of December 16, 2016, indicates that the judge entered and continued hearing on Guan's motion to reconsider to January 9, 2017, "for [Peng] to show work comp case dismissed," which is neither a clear statement of what occurred in December or why Peng would be returning in January "to show work comp case dismissed." If the judge required Peng to dismiss her compensation claim, we would expect the judge to definitively state that requirement, rather than jotting an abbreviated note at the bottom of a "CASE MANAGEMENT" form, which is used to enter deadlines for discovery efforts and to note the purpose of upcoming case management conferences. The transcript of the January hearing contains no mention of a stay and is ambiguous as to whether the trial court mandated that Peng withdraw her claim before the Workers' Compensation Commission. Furthermore, Peng did not follow the purported order and did not dismiss her compensation claim.

¶ 22 Guan's appellate attorneys, who are new to the case and did not represent Guan in the trial court, point out the uncertainty in the record and contend that Peng waived her appellate argument by failing to first present it in the trial court either by written motion or at least during the hearing on Guan's motion to reconsider.

¶ 23 Any doubts that arise from an incomplete record are resolved against the appellant—the party who bears the burden of tendering a sufficient record to support his or her arguments. *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 9, 70 N.E.3d 244. Moreover, our

adversarial system does not allow Peng to introduce new arguments in a court of review. *Pajic v. Old Republic Insurance Co.*, 394 Ill. App. 3d 1040, 1051, 917 N.E.2d 564, 574 (2009) (arguments raised for the first time on appeal are waived). We will not presume that the judge erroneously denied a stay or exceeded the scope of the circuit court's jurisdiction by ordering Peng to take certain steps in the workers' compensation forum. Without an adequate record preserving the claimed error, we decline to presume that the error occurred. We presume that the trial judge knew and followed the law, unless the record affirmatively indicates otherwise, and we presume that the judge's orders have a sufficient factual basis. *Wing*, 2016 IL App (1st) 153517, ¶ 9, 70 N.E.3d 244.

¶ 24    Peng's contentions about the motion to dismiss are the heart of this appeal. The standard of review for rulings on motions to dismiss pursuant to section 2-619 of the Code of Civil Procedure is *de novo.* 735 ILCS 5/2–619 (West 2014); *Foster v. Johnson*, 378 Ill. App. 3d 197, 200, 882 N.E.2d 108, 110 (2007). Section 2-619 authorizes a defendant to raise certain defects and defenses that negate a plaintiff's cause of action. *Foster*, 378 Ill. App. 3d at 200, 882 N.E.2d at 110. A section 2-619 motion provides a means of disposing not only of issues of law but also of easily proven issues of fact. *Barber-Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1072, 603 N.E.2d 1215, 1221 (1992). A section 2-619 motion may be supported by affidavits; the products of discovery, such as interrogatory answers; documentary evidence not incorporated into the pleadings as exhibits; testimonial evidence; or other evidentiary materials. *Barber-Colman*, 236 Ill. App. 3d at 1068, 603 N.E.2d at 1219. Guan contended Peng was seeking relief in the wrong forum. Peng argues the dismissal of her civil action was an error because she has a right to sue a coemployee for an injury that occurred outside the course of her employment. Peng contends she was commuting to work, and that she was not at her employer's

premises, not at her job site, not performing any duty within the scope her employment as a restaurant worker, and not being compensated for her travel time. She also points out that her employer did not require her to live in any specific area or use any specific means of transportation to and from work and that she made those choices. Peng contends she is analogous to the United Airlines flight attendant who injured her knee while a passenger, not on duty, flying on a leisure travel pass from Denver to New York City, the day before she was to work on a flight departing New York. *United Airlines, Inc. v. Illinois Workers' Compensation Comm'n*, 2015 IL App (1st) 151693WC, 50 N.E.3d 661. In those circumstances, the flight attendant's knee injury did not arise out of or in the course of her employment and was not compensable through the workers' compensation system. *United Airlines*, 2015 IL App (1st) 151693WC, 50 N.E.3d 661. Peng also contends that she filed a compensation claim only after she filed this civil suit and did so out of caution and on the eve of the statute of limitations because there was uncertainty as to the proper venue for her recovery, as authorized by *Rhodes* and *Wren*, and that her decision to preserve her right to worker's compensation benefits did not negate her election of this civil suit. *Rhodes v. Industrial Comm'n*, 92 Ill. 2d 467, 442 N.E.2d 509 (1982); *Wren v. Reddick Community Fire Protection District.*, 337 Ill. App. 3d 262, 785 N.E.2d 1052 (2002). She contends that her employer's unsolicited direct payment of some of her initial medical expenses was not due to her affirmative election of worker's compensation benefits and that the employer's fractional contribution toward the medical care and pay that she is owed by the employer is insufficient to affect her legal rights. She contends *Copass* authorizes her to receive worker's compensation benefits yet also pursue a civil negligence action. *Copass v. Illinois Power Co.*, 211 Ill. App. 3d 205, 211, 569 N.E.2d 1211, 1215 (1991) (survivor's acceptance of uninitiated payments was insufficient to constitute an election of statutory benefits, so as to bar a

wrongful death suit alleging spouse was killed by the intentionally tortious actions of employer and coemployee).

¶ 25     We find that the facts and relevant law indicate that, regardless of Peng's preference for civil litigation against her allegedly negligent coworker, the workers' compensation system is the exclusive source of compensation from her employer and coemployee for an injury that occurred during the course of her employment. Peng was traveling in an employer-controlled passenger van when the van struck another vehicle on the interstate and was thus injured in a work-related accident (*Hall*, 178 Ill. App. 3d at 413, 533 N.E.2d at 452; *Hindle*, 68 Ill. 2d at 313, 370 N.E.2d at 166; *Sjostrom*, 49 Ill. App. 2d at 460, 200 N.E.2d at 24), in what can be thought of as an extension of her work site or a "a small ambulatory portion of the [employer's] premises." (Internal quotation marks omitted.) *J.D. Dutton*, 584 P.2d at 1192. Peng was not compensated for her commute time or required to use the restaurant vanpool to get to and from the restaurant, and thus was not "on the job" in the traditional sense of that phrase, but she relinquished control over the conditions of transportation when she climbed into a vehicle owned by her employer and driven by her coemployee under the employer's direction. *Johnson*, 537 N.W.2d at 772. Peng's employer controlled the conditions and risks of transportation and thus exposed itself to liability for its employees' injuries during their commute. *Hall*, 178 Ill. App. 3d at 413, 533 N.E.2d at 452; 2 A. Larson, Workers' Compensation Law § 15.01 (2014).

¶ 26     Peng is like the suburban McDonald's shift worker in *Hall*, the corn detasselers in *Hindle*, and the civil engineer in *Sjostrom*. *Hall*, 178 Ill. App. 3d 408, 533 N.E.2d 448; *Hindle*, 68 Ill. 2d 309, 370 N.E.2d 165; *Sjostrom*, 49 Ill. App. 2d 451, 200 N.E.2d 19. In each of these examples, accidents occurred in an employer-controlled vehicle, either before the employee arrived at or left the job site for the day. The McDonald's employee in *Hall* finished his shift

before he accepted a ride to the local train station, the corn detasselers in *Hindle* were never paid for their time returning to town in the back of a pick-up truck, and the Chicago-based engineer in *Sjostrom* was en route from home to work in another town where he would be supervising the construction of a new plant. *Hall*, 178 Ill. App. 3d 408, 533 N.E.2d 448; *Hindle*, 68 Ill. 2d 309, 370 N.E.2d 165; *Sjostrom*, 49 Ill. App. 2d at 453, 200 N.E.2d at 21. In *Hall*, the McDonald's restaurant manager was performing one of his job duties when he transported restaurant employees to the local train station; in *Hindle*, the crew leader was required by the employer to supervise and transport her team members from the cornfields to town; and in *Sjostrom*, a mechanical engineer and civil engineer were instructed to commute together so the employer could avoid duplicate travel expenses. *Hall*, 178 Ill. App. 3d 408, 533 N.E.2d 448; *Hindle*, 68 Ill. 2d 309, 370 N.E.2d 165; *Sjostrom*, 49 Ill. App. 2d at 454, 200 N.E.2d at 21. Peng is no different from these employees whose sole source of compensation from their employer and coemployee was through the workers' compensation system, rather than tort litigation. *Hall*, 178 Ill. App. 3d at 414, 533 N.E.2d at 452; *Hindle*, 68 Ill. 2d at 313, 370 N.E.2d at 166; *Sjostrom*, 49 Ill. App. 2d at 464, 200 N.E.2d at 26. See also *Ramsey*, 175 Ill. 2d at 224, 676 N.E.2d at 1307 (where it was undisputed that coworkers were acting within the scope of their employment when the vehicle one of them was driving collided with another vehicle, but the question was whether the other driver/third party could recover contribution from a driver who was immunized by the Act's exclusivity provision). Furthermore, Peng's situation is not analogous to the United Airlines flight attendant whose employer was in the transportation business and whose commute on the day she was injured was independent of her employment relationship with the airline. *United Airlines*, 2015 IL App (1st) 151693WC, 50 N.E.3d 661. Royal Illinois was in the restaurant

business and its vanpool was for its employees to get to and from work and was not open to the general public.

¶ 27 Peng focuses on irrelevant facts when she points out that her employer did not require her to live in the Chinatown or Bridgeview neighborhoods and she could chose any means she wanted to commute to work from Chicago to Hoffman Estates. It makes no difference that Peng was not at her job site, not performing any restaurant tasks, and not being compensated for her time when she was being chauffeured to the restaurant by her coemployee in an employer-controlled van. The authority discussed above indicates that none of these details affects Peng's right to compensation through the workers' compensation system. The case law and treatise indicate the dispositive facts for purposes of compensation are that the vehicle was an employer-controlled conveyance for employee travel. It is undisputed that Royal Illinois provided the van and driver and thus had control over the conditions of Peng's commute. Therefore, Royal Illinois is liable for Peng's job-related injury through the workers' compensation system and not a civil suit. It follows that Guan is also immune from Peng's common law negligence claim because he was acting within the scope of his employment when his alleged negligence caused the collision which injured Peng. *Ramsey*, 175 Ill. 2d at 227, 676 N.E.2d at 1308.

¶ 28 We also reject the suggestion that Peng is free to choose between the workers' compensation system and the courts and has chosen to litigate. The Act provides that when an employee's injury is compensable through the Act, no common law or statutory right to compensation is available. 820 ILCS 305/5(a) (West 2014). The injury need only be compensable, and there is no statutory language indicating the employee must actually claim, elect, or receive worker's compensation in order to trigger the exclusivity provision. Even if Peng never filed a compensation claim, according to the plain language of the Act, the Act

applies to her injury, and section 5(a) precludes the current civil action. Regardless of whether Peng first filed her lawsuit against Guan or her worker's compensation claim against Royal Illinois, and regardless of whether she has accepted any amount of benefits from Royal Illinois's insurer Travelers Insurance, Peng's only source of compensation from any of them for her injuries sustained in the vanpool accident is through a worker's compensation claim.

¶ 29 We also reject Peng's suggestion that she may maintain a civil suit because there is some uncertainty as to the proper venue for her recovery. *Rhodes* and *Wren* indicate that nothing prevents a cautious employee from filing both a worker's compensation claim and a civil tort suit to toll the statute of limitations where grounds for recovery are uncertain. *Rhodes*, 92 Ill. 2d at 470, 442 N.E.2d at 511; *Wren*, 337 Ill. App. 3d at 266, 785 N.E.2d at 1056. Nevertheless, an injured employee cannot recover from the employer on both claims, and once the employee has collected compensation on the basis that his injuries are compensable under the Act, the employee is estopped from recovering damages on the basis that his injuries are not compensable under the Act. *Rhodes*, 92 Ill. 2d at 470, 442 N.E.2d at 511; *Wren*, 337 Ill. App. 3d at 266, 785 N.E.2d at 1056. The record indicates that there is no uncertainty about Peng's right to compensation through the Act, and therefore, she may no longer maintain a duplicative civil action seeking damages from her coemployee for the same injuries. More specifically, assistant manager Chen's affidavit attached to Guan's motion to dismiss Peng's second amended complaint (which he also tendered in opposition to Peng's third amended complaint) indicated Guan was driving the van within the scope of employment, and that Royal Illinois had workers' compensation coverage in effect through Travelers Insurance. Peng did not refute the Chen affidavit with any contrary averment. The undisputed facts were sufficient to establish that Peng's exclusive form of compensation was through the Act and that her civil claim against

Guan was not sustainable and should have been dismissed with prejudice. Furthermore, there is no uncertainty about the law. The employer-conveyance principle is a sound, well-established one in Illinois and other jurisdictions. Additional cases which hold that an injury arose out of and within the course of employment, where an employee was injured in an accident while commuting in an employer-provided conveyance, include: *Smithey*, 938 P.2d 498; *Daniels v. Commercial Union Insurance Co.*, 633 S.W.2d 396 (Ark. 1982); *Securex, Inc. v. Couto*, 627 So.2d 595 (Fla. Dist. Ct. App. 1993); *Adams v. United States Fidelity & Guaranty Co.*, 186 S.E.2d 784 (Ga. Ct. App. 1971); *Hansen v. Estate of Harvey*, 806 P.2d 426 (Idaho 1991); *Thayer*, 653 N.W.2d at 600 (the zone of protection provided by workers' compensation "may extend to include injuries occurring even beyond the physical parameters of the employer's premises"); *Kindel v. Ferco Rental, Inc.*, 899 P.2d 1058 (Kan. 1995); *Receveur Construction Co./Realm, Inc. v. Rogers*, 958 S.W.2d 18 (Ky. 1997); *McBride v. R.F. Kazimour Transportation, Inc.*, 583 So.2d 1146 (La. Ct. App. 1991); *Watson v. Grimm*, 90 A.2d 180 (Md. 1952); *Lassabe v. Simmons Drilling, Inc.*, 743 P.2d 568 (Mont. 1987); *Schauder v. Pfeifer*, 570 N.Y.S.2d 179 (App. Div. 1991); *William F. Rittner Co. v. Worrkmen's Compensation Appeal Board*, 464 A.2d 675 (Pa. Commw. Ct. 1983); *Medlin v. Upstate Plaster Service*, 495 S.E.2d 447 (S.C. 1998); *Pickrel v. Martin Beach, Inc.*, 124 N.W.2d 182 (S.D. 1963); *Vaughan's Landscaping & Maintenance v. Dodson*, 546 S.E.2d 437 (Va. 2001); *Doering v. Wisconsin Labor & Industrial Review Comm'n*, 523 N.W.2d 142 (Wis. Ct. App. 1994). In short, Peng does not need to maintain her civil action as a backstop to her compensation claim.

¶ 30    Peng devotes a considerable portion of her appellate brief to argument that the court abused its discretion by granting Guan's motion to reconsider his motion attacking Peng's third amended complaint. The purpose of a motion to reconsider is to bring the court's attention to (1)

error in the court's previous application of the law, (2) changes in the law, or (3) newly discovered evidence that was not available at the time of the first hearing. *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 987, 518 N.E.2d 424, 429-30 (1987); *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248, 571 N.E.2d 1107, 1111 (1991). A motion for reconsideration is directed at the trial court's sound discretion and the court's ruling will not be disturbed on appeal absent an abuse of that discretion. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 347, 775 N.E.2d 987, 1000 (2002).

¶ 31    For instance, Peng argues that the reconsideration motion was based on so-called "newly discovered" evidence, when the material was actually available to Guan when he prepared his motion to dismiss and thus Guan unfairly used the reconsideration process to compensate for his inadequate preparation on the motion to dismiss. Peng argues that there was no change in the law or error in the court's earlier ruling, and that when a motion for reconsideration relies only on newly discovered evidence, unless there is a reasonable explanation indicating evidence was not available at the time of the original hearing, the trial court is under no obligation to consider it. *Kaiser*, 164 Ill. App. 3d at 987, 518 N.E.2d at 429-30 (trial court which had denied fee request that was not supported by adequate records was not required to reconsider on basis of reconstructed time records); *Gardner*, 213 Ill. App. 3d at 248, 571 N.E.2d at 248-49 (trial court could properly disregard new affidavit where plaintiff did not give reasonable explanation as to why affidavit was not submitted prior to hearing). Peng contends Guan offered no explanation for his failure to timely present the Travelers Insurance letter and the screenshot and was unfairly given a "second bite at the apple." Peng contends that it was a further abuse of discretion to grant reconsideration and dismissal on the basis of a new legal theory, the election of remedies doctrine, instead of the course of employment doctrine that was the basis for Guan's motion to

dismiss. Peng contends that she "has essentially been required to hit a moving target" in this litigation and was substantially prejudiced by the court's arbitrary and unreasonable combination of two distinct legal theories. Peng's third contention regarding the motion for reconsideration is that a statement during the hearing reveals that the court treated one of Guan's statements as a judicial admission on Peng's behalf, which defies the definition of the term admission, and that Peng made no such admission.

¶ 32    We disagree with Peng's premise that the court's ruling was unfair and prejudicial to her case. We find that the initial denial of Guan's motion to dismiss the third amended complaint was an erroneous application of the law and that the court corrected its error by granting Guan's motions for reconsideration and dismissal. The previous denial was error because, as discussed above, the workers' compensation system has always been Peng's exclusive remedy for her injuries regardless of whether she affirmatively pursued this civil suit against her coworker instead of her worker's compensation claim. Where an injury was to an employee and arose out of and in the course of employment, the workers' compensation system provides the employee's exclusive remedy. The fact that Peng was injured in an employer-controlled conveyance, not the fact that she received benefits, was conclusive of her rights. Assistant manger Chen's affidavit, which Guan tendered in opposition to an earlier version of Peng's complaint, was unopposed by Peng and showed that she was injured in an employer-controlled conveyance and that the dismissal was warranted. If there was any remaining doubt about Peng and Guan's respective rights, it was addressed by the "newly discovered" material, which showed that Peng and another van passenger had applied for and received compensation under the Act. However, this "new" evidence was not dispositive. The existing record established that Peng was injured during the

course of employment, and therefore, the motions to dismiss and reconsider should have been granted. Peng was not treated unfairly when the trial court corrected its error.

¶ 33     We also point out that the election of remedies theory was introduced into the proceedings by Peng, not Guan, when Peng brought in *Rhodes* and *Wren* for the proposition that she was entitled to file both a civil action and compensation claim while she was uncertain and "cautious" about the proper forum. Thus, when the court made statements such as, "We're not going to litigate in two forums," the court was responding to Peng's arguments, rather than unfairly granting the motion to dismiss on the basis of new theory which caught Peng by surprise.

¶ 34     Furthermore, we reject the premise of Peng's argument about the court's statement, "There's a pending workers' compensation matter which they've admitted in the course of." The hearing was primarily about whether there was any question that Peng's injury occurred during the course of her employment. Peng argues that Guan is the "they" who made the "admission" and that the court improperly attributed the admission to Peng, who has never conceded that her injury was work-related. The transcript discloses, however, that "they" was a reference to the employer and its workers' compensation insurer, not Guan, and that their admission was that Peng was entitled to worker's compensation benefits. The parties' arguments and exhibits, such as assistant manager Chen's affidavit and the other documentation indicating passenger Cheng's injuries were treated as "in the course of" employment assured the court that the employer and its insurer were not disputing that Peng was injured during the course of her employment and would be compensated through the workers' compensation system rather than a civil suit.

¶ 35     We come to the conclusion that none of Peng's arguments about the reconsideration ruling is well-grounded or persuasive, and we affirm the granting of reconsideration.

¶ 36    Having considered and rejected Peng's arguments, we affirm the granting of reconsideration and the dismissal of Peng's action as a matter of law.

¶ 37    Affirmed.