NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230145-U

NO. 4-23-0145

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 22, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| ROBERT SHOEMAKER, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Morgan County |
| CATHY N. BADER, as Executor of the | ) | No. 21L14 |
| Estate of Verne Bader, | ) | |
| Defendant-Appellee. | ) | Honorable |
| | ) | Christopher E. Reif, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Steigmann and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court reversed, finding the circuit court erred in granting defendant's motion to dismiss when there remained material and genuine issues of fact precluding dismissal of plaintiff's complaint for negligence.

¶ 2    Plaintiff, Robert Shoemaker, appeals from the circuit court's order dismissing with prejudice his negligence complaint against defendant, Cathy N. Bader, as executor of the estate of Verne Bader. The court ruled Verne Bader (Bader) was an employee on the date of the accident and because Shoemaker was also an employee, his remedy for damages was confined to recovery under the Illinois Workers' Compensation Act (Act) (820 ILCS 305/5(a) (West 2020)). Plaintiff claims the court erred in dismissing the action when material and genuine issues of fact remain in dispute. We agree and reverse the court's order dismissing plaintiff's amended complaint and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4        The following factual background was taken from the pleadings and supporting documents in the record. In February 2014, Bader sold his agricultural services business to Helena Agri-Enterprises, LLC (Helena) and became a branch manager of Helena's location in Meredosia. On February 13, 2019, after Bader's doctor advised Helena that Bader could not work "without posing a safety risk" to himself, Sara O'Brien, Helena's leave specialist, commanded Bader to "go home and call in a disability claim." Sometime around that date, Bader was placed on disability with Helena's insurance carrier. The area manager, Brian Mattingly, questioned O'Brien about Bader's "restrictions as a Helena employee" while on disability. Mattingly indicated they were "going to need his advice going into [the] spring season," so they "need[ed] this to go as smoothly as possible." Mattingly asked whether Bader could use his company phone, drive the company vehicle, talk to customers, and visit the office while on disability. O'Brien warned about the "consequence[s] of allowing him to work while on disability leave." O'Brien posed what seemed to be a rhetorical question: "If he were to fall doing any of these things, would it be viewed in the scope of company business?" She went on to state Bader had been "very reluctant to be on leave in the first place and if we don't give him hard lines of what he can and can't do[,] I worry that he will do more than he should."

¶ 5        In an e-mailed response, Sherrie Scardino, the human resources (HR) director, indicated she had spoken with Mattingly and advised there were "no issues with phone at all but that [she] had major concerns about [Bader] driving." She "would prefer [they] take his Helena truck based on what doctor said." She noted Bader requested he be able to visit the office. Scardino indicated she had told Bader she "had no issues if [Bader] dropped by for a cup of coffee for a true visit but that [Bader] couldn't be camping out there."

¶ 6        According to an incident report, on July 9, 2019, at approximately 5:30 p.m., Brian Staake, a crop advisor, called manager Jason Smith at Helena's office to report that Staake's sprayer was stuck in a field. He needed help towing it out. Smith asked Brian Battefeld, also a crop advisor, to take the loader to the field to pull out Staake's sprayer. Smith went to the field to assess the situation. He called plaintiff, a truck driver, and asked him to bring shovels to the field. Bader, "who was at the location visiting, heard that a sprayer was stuck and he drove out to the field in his personal truck to see what was going on."

¶ 7        The report indicates Smith had a prior engagement, so he left Staake, Battefeld, and plaintiff to pull out the sprayer. The tow straps they were using broke. Bader "said that he would go get a bigger clevis and strap back at the plant." Once the larger rig was in place and they were ready to try again, Bader put his truck in reverse to move it out of the way. Plaintiff was, at the time, putting the broken straps into the bed of Bader's truck. Bader backed over plaintiff, who was seriously injured as a result.

¶ 8        On July 1, 2021, plaintiff filed a lawsuit against several entities and individuals, including Bader. After considering the defendants' various motions to dismiss, the circuit court dismissed all defendants except Bader, finding plaintiff's claims were barred by the exclusive remedy provision of the Act. The court allowed plaintiff to "seek limited discovery of defendant Bader" to discern whether Bader was considered plaintiff's coemployee.

¶ 9        On August 25, 2021, in support of his motion to dismiss, Bader executed an affidavit, claiming that, on the date of the accident, he was employed by Helena and "was at Helena's facility and speaking with Jason Smith, an operations manager for Helena." After learning of the stuck sprayer, "[i]t was determined that [Bader] would take the ropes/chains/cables to assist fellow employees of Helena in getting the sprayer unstuck." Bader stated a Helena

employee placed the supplies in the back of Bader's personal truck and Bader delivered the supplies to the field.

¶ 10    On December 3, 2021, Bader passed away from causes unrelated to the incident. On February 18, 2022, plaintiff filed a motion for leave to amend the complaint to substitute Bader's representative as a defendant. The circuit court allowed plaintiff to amend and to substitute Cathy N. Bader, as the personal representative of the estate of decedent, as a party defendant. The amended complaint alleged Bader came to assist in dislodging the sprayer in his personal truck and that he "was not working in the course and scope of employment at [Helena] at the time of the incident." Plaintiff alleged as a direct and proximate result of Bader's negligent acts, he sustained bodily injuries, pain and suffering, emotional distress, loss of quality of life, and lost wages.

¶ 11    Bader filed a section 2-619 motion to dismiss. See 735 ILCS 5/2-619 (West 2022). The circuit court reserved judgment on Bader's motion, allowing plaintiff to obtain discovery regarding Bader's employment status with Helena at the time of the incident. As a result of plaintiff's discovery requests, Helena produced documents but moved to suppress and quash subpoenas for depositions of Helena employees.

¶ 12    On January 26, 2023, the circuit court heard arguments on Bader's motion to dismiss. Bader's counsel claimed the sole issue was whether Bader was a coemployee of plaintiff's at the time of the incident. He said this issue "was put to rest *** actually in a court filing made by Helena, the employer." He relied on a statement that appeared in Helena's memorandum in support of its motion to quash subpoenas. There, Helena stated Bader *was* a Helena employee on July 9, 2019. Counsel also cited to plaintiff's deposition, where plaintiff recalled Bader had brought Helena property—ropes and chains—to the site. Counsel also referred

to plaintiff's explanation that he had placed the broken strap in Bader's truck because he assumed Bader "would be responsible for going to get additional ropes and chains to help them get this sprayer rig unstuck, and it was in the course of this that, that [plaintiff] was injured." Counsel argued he did not "think that the evidence before the court show[ed] that there [was] any question [Bader] was an employee of Helena at the time of this incident."

¶ 13　　　　In response, plaintiff's counsel narrowed the issue from whether Bader was a coemployee to whether Bader was acting within the course and scope of his employment at the time of the incident. Counsel noted Bader was, at the time, on disability leave and had been instructed multiple times by Helena's representatives that he could not work. Counsel cited to HR director Scardino's e-mail, where she had stated (1) they needed to take Bader's Helena truck, (2) Bader was allowed to visit the office, (3) he could drop by for a cup of coffee for "a true visit," but (4) Bader "couldn't be camping out there."

¶ 14　　　　Counsel also relied on Helena's employment records showing Bader was "off work" for the 23 out of 23 days in July 2019. Counsel also referenced a produced record from Helena, which quoted the on-site manager, Smith, stating in an explanation of the events leading up to the incident: "It was expressed 'We've got this' and so [Bader's help] was not needed." Counsel also argued Bader was a sales manager and, as such, he likely would not have been involved in removing the stuck sprayer rig from the field even if he was not on disability at the time, as it would not have been in the course and scope of his employment. Lastly, counsel pointed to the affidavits of Staake and Battefeld. Both affidavits mentioned that, in the course of their employment with Helena on July 9, 2019, they (each one naming the other) attempted to assist with the removal of a spray applicator that had gotten stuck in a field. Each said plaintiff was

injured "on that same date while assisting [them both] to free the spray applicator." Neither affidavit mentioned Bader.

¶ 15        After considering the arguments, the circuit court stated as follows:

> "Okay. Court has heard the arguments of counsel, has reviewed the motions in this case. Court originally reserved ruling and granted Plaintiff leave to proceed with discovery prior to listening to these arguments, believes now the evidence is clear that Bader was an employee before, during, and after this accident, and I think the evidence establishes that clearly. I believe that he was acting within the course and scope of his employment, if that is the test you believe is appropriate, but certainly in either test I believe that he was employed by them. I think that's clear, I think that's without question, and that's what he was doing there was working for them, so the Court's going to grant defendant's Motion for Judgment Pursuant to 735 ILCS 5/2-619 [(West 2022)] and dismiss Count 2 with prejudice."

When asked by plaintiff's counsel to clarify its findings, the court stated:

> "Well, I first found that their motion is supported by the case cited by Plaintiff, the factors that it did not arise from his or her—that an employee could escape the exclusivity provision and proceed with civil litigation if the injury did not arise from his or her employment, was not received during the course of employment, was not accidental, and was not compensable under the Act. I believe the injury did arise from the employment, was received during the course of the employment, was not [*sic*] accidental, and obviously was compensable under the Act because he's received work comp for that.

Based upon your further argument that you believe that it has to be within the course and scope, I would find that he also was within the course and scope of his employment at the time that this accident occurred."

¶ 16    This appeal followed.

¶ 17                    II. ANALYSIS

¶ 18    Plaintiff appeals, arguing the circuit court erred by dismissing his complaint against Bader. Because there remains contested material and genuine issues related to Bader's status as a coemployee of plaintiff's within the meaning of the applicable law, we agree with plaintiff and reverse the court's order of dismissal.

¶ 19    Section 2-619(a)(9) of the Code of Civil Procedure provides that a defendant may file a motion for dismissal of an action on the grounds "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2022). "The purpose of a section 2-619 motion to dismiss *** is to dispose of issues of law and easily proven issues of fact at the outset of litigation." *Dratewska-Zator v. Rutherford*, 2013 IL App (1st) 122699, ¶ 15. A section 2-619 motion to dismiss "admits the legal sufficiency of the complaint, but raises defects, defenses, or other affirmative matters appearing on the face of the complaint or established by external submissions, which defeat the action." *Nourse v. City of Chicago*, 2017 IL App (1st) 160664, ¶ 14. "In deciding a section 2-619 motion, a court accepts all well-pleaded facts and their inferences as true and construes all pleadings and supporting documents in favor of the nonmoving party." *In re Estate of Shelton*, 2017 IL 121199, ¶ 21.

¶ 20    "A section 2-619(a)(9) motion shares procedural similarities with a summary judgment motion in that affidavits and other evidentiary matter is permitted to support the

affirmative matter, and a shifting burden of proof upon satisfaction of the defendant's burden of producing an affirmative matter that completely bars the plaintiff's cause of action." *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 53. We review *de novo* a ruling on a section 2-619 motion to dismiss. *Munoz v. Bulley & Andrews, LLC*, 2022 IL 127067, ¶ 19.

¶ 21 The affirmative matter at issue here is whether Bader was a Helena employee acting within the course and scope of his employment at the time of the accident. That is, the "defects, defenses, or other affirmative matters" (*Nourse*, 2017 IL App (1st) 160664, ¶ 14) which Bader believes preclude an action against him and support dismissal of plaintiff's complaint are contained in the exclusive remedy provision of the Act (820 ILCS 305/5(a) (West 2020)). Bader claims he and plaintiff were coemployees at the time of the accident, and therefore, plaintiff's lawsuit is barred, as he must instead take advantage of the exclusive remedy provision set forth in section 5(a) of the Act.

¶ 22 The purpose of workers' compensation is to place upon the industry the costs of industrial accidents. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 469 (1990). "A co-employee acting in the course of his employment who accidentally injures an employee is immune from a common law negligence action in furtherance of the Act's underlying policy that the costs of industrial accidents be placed on the industry." *Xiao Ling Peng v. Nardi*, 2017 IL App (1st) 170155, ¶ 5 (citing *Ramsey v. Morrison*, 175 Ill. 2d 218, 227 (1997)). Indeed, section 5(a) of the Act provides:

> "[N]o common law or statutory right to recover damages from the employer, his insurer, *** or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by

the provisions of this Act." 820 ILCS 305/5(a) (West 2020). "[T]he Act operates to make workers' compensation benefits the exclusive remedy of an injured employee against a negligent co-employee acting in the course and scope of his employment." *Garland v. Morgan Stanley & Co.*, 2013 IL App (1st) 112121, ¶ 25.

¶ 23    "An employee can escape the exclusivity provision and proceed with civil litigation against an employer and/or co-employee only if the employee can allege and prove the injury (1) did not arise from his or her employment, (2) was not received during the course of employment, (3) was not accidental, such as an intentionally inflicted injury, or (4) was not compensable under the Act, such as being discharged in retaliation for filing a claim for worker's compensation." *Xiao Ling Peng*, 2017 IL App (1st) 170155, ¶ 8.

¶ 24    Here, by ordering dismissal, the circuit court found plaintiff's complaint against Bader was barred because Bader was plaintiff's coemployee and was acting in the course and scope of his employment at the time of the incident. However, in this case, the facts and the law supporting the court's conclusion are not definitive.

¶ 25    It is undisputed that Bader was technically an employee of Helena at the time of the accident. He was on temporary disability leave and being compensated by Helena's disability insurance carrier. However, according to case law, being a "coemployee" to the injured party is not enough on its own for the coemployee to fall within the protection of the exclusivity clause of the Act. Rather, the accident or negligent act must have arisen from and occurred within the scope and course of his employment.

¶ 26    The Second District's decision in *Carrillo v. Hamling*, 198 Ill. App. 3d 758 (1990), is factually similar, differing only in that the coemployee's act was found to be intentional versus, as in the case *sub judice*, negligent. In light of the ultimate question to be decided, *i.e.*, whether

the exclusivity clause applies, we find the nature of the act to be a nonissue. The real issue is whether the injury arose out of and in the course and scope of the coemployees' employment.

¶ 27        In *Carrillo*, an Aurora police officer responded to a domestic-battery call. When she arrived at the scene, she found a fellow police officer battering his wife. The on-duty officer attempted to restrain the husband, but he flung the officer onto the sidewalk, causing her injuries. She filed a lawsuit against the husband/fellow police officer for damages. He filed a section 2-619 motion to dismiss, claiming her lawsuit was barred by the exclusive remedy clause of the Act. The circuit court agreed and dismissed the complaint, finding the two officers were coemployees and were "on duty" at the time of the injury, and thus, the injured officer could not recover damages from her fellow officer. (The court relied on an Aurora Police Department general order, which provided that an Aurora police officer " 'will be considered as being always on duty.' "). *Id.* at 760-61.

¶ 28        The appellate court reversed the dismissal, finding the defendant's "mere status as plaintiff's co-worker [did] not shield defendant from liability for plaintiff's injuries which resulted from defendant's intentional acts." *Id.* at 762. Rather, as the court pointed out, the determination of whether the injured employee could pursue a common law action against a coemployee is whether the coemployee was acting in the course of his employment. *Id.* at 765 (" '[I]mmunity attaches to the coemployee *only when the coemployee is acting in the course of his employment*.' " (Emphasis in original.) (quoting 2A A.Larson, The Law of Workmen's Compensation §§ 72.22, 72.23 (1989))). The *Carrillo* court found support in other Illinois decisions as well. See *Chmelik v. Vana*, 31 Ill. 2d 272, 278 (1964) (finding a lawsuit was barred by the Act because the injury arose out of and in the course of the employment of the injured employee and his coemployee); *Williams v. Country Mutual Insurance Co.*, 28 Ill. App. 3d 274,

276-77 (1975) (finding the Act precluded common law action where the injury arose out of and in the course of their employment); *Brooks v. Carter*, 102 Ill. App. 3d 635, 639 (1981) (finding that because nothing in the record suggested "that either plaintiff or defendant had engaged in any personal deviations from activities incident to their employment," the common law action was barred).

¶ 29          Relying on this precedent and finding no case law to the contrary, the appellate court found the Act did not preclude a tort action against a coemployee based solely on the fact they were coworkers. *Carrillo*, 198 Ill. App. 3d at 766. Rather, "to enjoy any such immunity flowing from the exclusivity provision of the Act, the co-employee's tortious act must have been committed in the course of his employment." *Id*.

¶ 30          As stated, there is no real dispute that on July 9, 2019, Bader was legally and technically an employee of Helena. However, as *Carrillo* notes, the Act does not preclude plaintiff's common law action against Bader merely because they were coworkers. To gain dismissal, defendant must demonstrate plaintiff's injuries were sustained in an accident arising out of and in the course of their employment. Our review of the (1) pleadings, accepting the well-plead allegations as true as we are compelled to do, and (2) the supporting documentation in the record leaves uncertainty as to the issue of whether Bader was in the field helping with the stuck sprayer as an act which arose out of and in the course of his employment. In other words, was he authorized to be in the field as an employee of Helena?

¶ 31          Based on the internal communications and company records, the known facts are that he was on short-term disability leave at the time, was the subject of safety concerns based on his doctor's report, and was considered "off work" for the entirety of July 2019, including the day of the accident. After receiving a report from Bader's doctor, Scardino, the HR director, indicated

she had "major concerns" about Bader driving, she "prefer[red]" they "take his Helena truck," and she did not want Bader "camping out" at the office. The leave specialist, O'Brien, indicated to Scardino and others that "if we don't give him hard lines of what he can and can't do[,] [she] worr[ied] that he will do more than he should." She instructed Bader "that he cannot work" and that doing so would "pos[e] a safety risk."

¶ 32    To determine whether an employee was acting within the course and scope of his employment, three criteria must be met: (1) the complained of conduct was the kind the employee was employed to perform, (2) the conduct occurred substantially within the authorized time and space limitations, and (3) the conduct was actuated, at least in part, by a purpose to serve the master. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 164 (2007). Because there remains a question of whether Bader was operating within or beyond the scope of his employment based on these three criteria, dismissal of plaintiff's common law action against Bader under the exclusivity clause of the Act is precluded. The issue remains unresolved, which means that plaintiff's claim is not defeated by an affirmative matter. As such, dismissal was not appropriate.

¶ 33                                III. CONCLUSION

¶ 34    For the reasons stated, we reverse the circuit court's order and remand for further proceedings consistent with our decision.

¶ 35    Reversed and remanded.